## SMITH et al. v. CARTER et al.
### No. 4071.

Court of Civil Appeals of Texas. Texarkana.
Dec. 31, 1931.

Rehearing Denied Jan. 14, 1932.

John R. Arnold and R. L. Jones, both of Henderson, for appellants.

R. T. Jones and F. A. Taylor, both of Henderson, for appellees.

LEVY, J.

Rosetta Smith for herself and as next friend for the minors Millie and Richard Smith, and Elsie Smith Anderson and her husband, and Dora Smith Burrell and her husband, greatgrandchildren of Mattie Smith, deceased, brought the suit against George Carter, W. T. Carter, Willie Jackson, Lester Evans, and Jackson Lewis in trespass to try the title to two tracts of land adjoining each other, containing seventy-five and one hundred acres, respectively, a part of the George May survey in Rusk county. It was claimed that growing trees were cut and made into lumber of the value of $600, and the annual rental value of the house was used and the land cultivated was $600 a year. The suit was filed November 17, 1927.

W. T. Carter, Jackson Lewis, and Willie Jackson in their answer "here now disclaim all rights, title and claims in and to the land and premises sued for in said petition." Lester Evans pleaded not guilty.

George Carter, besides plea of not guilty, specially claimed the land under warranty

deeds upon a valuable consideration from Mattie Smith and also Willie Jackson, an adopted heir of William Smith, the husband of Mattie Smith, and by cross-action sought to· cancel the deed from Mattie Smith to the plaintiffs, as casting a cloud upon the title of the said defendants. In the cross-action it is averred that the deed from Mattie Smith to the plaintiffs was made without any consideration and Mattie Smith was fraudulently induced to make it at a time when she was feeble in mind and body from extreme old age and sick in bed and unconscious; "that as a matter of fact she did not execute said deed nor did she authorize any one to execute it for her, and therefore said deed was practically a forged deed in so far as she was concerned;" that Mattie Smith just previous to her death repudiated the deed to plaintiff. The answer was not a verified answer under the statute.

The plaintiffs by supplemental petition entered special exceptions to the defendant's answer, and pleaded general denial; that defendant George Carter acquired possession of the land under contract of tenancy with plaintiffs and is estopped to dispute and deny plaintiffs' title; limitation of four years in bar of the remedy of rescission and cancellation of the deed to plaintiffs; that defendant acquired no title to any part of the land through deed from Willie Jackson.

In keeping with the verdict of the jury, a judgment was entered awarding the defendant George Carter a recovery of all the land in suit. The plaintiffs have appealed.

It appears that the property in suit was bought and paid for as community property, and was used and occupied as the homestead of William Smith and his wife, Mattie Smith. There were no children born of the marriage. Mattie Smith had a child, the ancestor of plaintiffs, by a former marriage. After William Smith died, Mattie Smith continued to live on the premises. She died April 9, 1927. William Smith, on August 1, 1893, executed, acknowledged, and registered in the county clerk's office, the instrument, viz.:

"The State of Texas, County of Rusk.

"Know all men by these presents, that I, William Smith, of the above state and county, do hereby adopt Willie Jackson as my legal heir, and that I will extend to him all the rights and privileges, both in law and in equity, as though he was my own son. Witness my hand on this First day of August, A. D. 1893."

On the 1st day of December, 1922, a warranty deed to the land was executed to the plaintiffs in this suit reciting as the consideration "love and affection." The signature to the deed was "Mattie X Smith," and the her mark conveyance appeared to ·be her deed. The certificate of acknowledgment recites that "Mattie Smith, wife of William Smith, deceased" was "personally known to me (the Justice of the Peace taking the acknowledgment) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same for the purpose and considerations therein expressed." This deed was duly registered on January 26, 1923. On February 4, 1924, the following agreement in writing was duly signed and acknowledged, and on August 5, 1924, duly registered:

"State of Texas, County of Rusk

"Know all men by these presents, that we: Henry Hightower, Hattie Hightower, Dora Smith, parties of the first part and George Carter, party of the second part, the grandchildren—heirs at law of Mattie Smith, do by these presents enter into a contract with George Carter according to the conditions and stipulations herein set forth, that we the said grand heirs of Mattie Smith do hereby rent—lease, let unto George Carter our land which was deeded to us by Mattie Smith on the first day Dec. 1922, and said deed is recorded in the Records of Rusk County in vol. 119, page 413, said land is fully described in said deed, and the said George Carter agrees to take the care, maintenance and support of Mattie Smith during her life time for the rents, rentals and income of said land, now therefore we the said heirs do hereby rent, lease and ·let said land to George Carter for an indefinite number of years, not to exceed the life time of Mattie Smith, and George Carter agrees to keep up said farm and pay the tax on said land, and it is further set out in this contract that if George Carter should make improvements on the place that would overrun the support of Mattie Smith ·by reason of her early death, then the said George Carter ·be compensated therefor. Any forfeiture of this contract by any of the parties shall nullify this contract.

"Witness our hands Feb. 4, 1924."

On February 21, 1927, Mattie Smith executed and acknowledged a warranty deed conveying "all that certain tract or parcel of land" in suit to George Carter. The deed was registered on April 16, 1927. The consideration recited was "the sum of Ten dollars to me in hand paid by George Carter and the further consideration that the said George Carter care for me during the rest of my life." On July 19, 1927, Willie Jackson (the adopted son) executed and acknowledged a ·warranty deed to defendant George Carter conveying "all that certain tract or parcel of land" in suit, upon consideration of $250. The deed was registered on July 23, 1927.

The issue submitted to the jury, besides the issues relating to rental value of the land and the amount of timber cut, was, reading: "No. 1: Do you find from the preponderance of the evidence that Mattie Smith executed

of her own volition the instrument dated December 1, 1922, and introduced in evidence in this case, by giving authority to have her name signed thereto?" The jury returned the answer of: "No."

The above issue and finding is challenged on appeal, in effect, as being without evidence to support it, irrespective of whether it be construed as a finding that the deed was a forgery or "without authority to have her name signed thereto," or was induced to be executed through fraud or fraudulent representations, or was executed not "of her own volition" but through duress exercised upon her. The evidence offered in behalf of the appellee George Carter, to sustain his attack upon the deed made to plaintiffs by Mattie Smith, goes to the extent, in effect, that she was an old woman, and with physical weakness and of mental impairment. The evidence does not show that her weakness or infirmity of mind was to the degree of being incapable of understanding the nature of her act. And if at one time she were sick and unconscious she was not in that condition at the time of the execution of the deed. Declarations of Mattie Smith were also offered, the quotation from one of the witnesses showing the same: "She told me she had been informed that she had deeded the property to her great-grandchildren, but that she had not done it, or if she had she did not know anything about it." None of the statements were made at or near the time of the execution of the deed. There is no pretense of evidence that any of the plaintiffs did any act or thing to induce or cause Mattie Smith to execute the deed. It is unnecessary to set out the evidence in more extended detail.

The justice of the peace testified: "I wrote this instrument (the deed to plaintiffs) while I was at John Tanner's house. I was at John Tanner's house because Mattie Smith sent for me to come there and write a deed. * * * She wanted the deed made to her grandchildren and I wrote the deed and she signed it. Mattie Smith made her mark. Mattie was in the bed and I held the pen and Mattie took hold of it and made the mark. I talked to Mattie before I wrote the deed, and she told me to make the deed. I did not know who she wanted to deed the land to until I got there (at the house) and she told me. She told me to leave out a portion of the land that they wanted the church built on. None of the children talked to me about making the deed. I had known Mattie Smith a number of years. After the deed was written I read it over to Mattie Smith. I would not have permitted Mattie to sign the deed if she were mentally incapacitated or if I had believed she was."

■ It is concluded that it should be held that the evidence affirmatively shows that Mattie Smith did execute the deed to the plaintiffs and of her actually "giving author-ity to have her name signed thereto." The evidence does not make the conveyance a forgery. The deed was acknowledged as required by law and timely recorded in the deed records of Rusk county, and the death of Mattie Smith did not occur until more than four years afterwards. There was no verified plea of non est factum filed by George Carter. Thomason v. Berry (Tex. Com. App.) 276 S. W. 185.

And the evidence does not show that the execution of the deed was influenced by fraudulent representations or fraud or duress on the part of or under the authority of the plaintiffs. There was not an inadequacy of consideration coupled with mental impairment. The deed was upon the consideration of "love and affection." And any promise of support was literally carried out. It affirmatively appears that on February 4, 1924, a written contract of lease of the premises was made with George Carter, by the terms of which George Carter was to have the use of the premises "for an indefinite number of years not to exceed the lifetime of Mattie Smith" upon the consideration of "the care, maintenance and support of Mattie Smith during her life." There is no pretense that this lease in its terms and spirit was not carried out. The very same consideration was recited in the deed to George Carter made by Mattie Smith about two months before her death.

■■ By the contract of lease of February, 1924, George Carter in effect recognized the deed from Mattie Smith to the plaintiffs and entered into possession of the land thereunder, and never repudiated such lease before the death of Mattie Smith. And even if the execution of the deed to plaintiffs may have been influenced by fraud or duress on the part of others acting in the benefit of the plaintiffs, the deed would not be void, but merely voidable, and could be avoided only by Mattie Smith upon whom it was exercised and whom it influenced. Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025; Rattner v. Kleiman (Tex. Civ. App.) 36 S.W.(2d) 249; Porter v. Brooks (Tex. Civ. App.) 159 S. W. 192; Kinnear v. Tolbert (Tex. Civ. App.) 262 S. W. 900, 901. Therefore the deed to plaintiffs, being valid, would pass to plaintiffs all the land in suit, unless the deed to George Carter from the adopted heir would operate to pass the one-half interest of the husband, William Smith. The appellants insist that under the statute of descent and distribution the adopted heir can take no title by inheritance of any community property of the adopting person. In the case of Harle v. Harle, 109 Tex. 214, 204 S. W. 317, 318, 15 A. L. R. 1261, the question before the court was that of whether or not the descendants of an adopted heir can take title by inheritance. The property in suit was community property of the adopter. The court held that the

words of the statute of descent and distribution of " 'child' or 'children of the deceased or their descendants' " meant and included only the descendant of one who is actually the child of the parent. The descendant of the adopted heir was denied an inheritable interest in the property. The same ruling in State v. Yturria, 109 Tex. 220, 204 S. W. 315, L. R. A. 1918F, 1079. But the ruling does not mean that the adopted person himself living at the time the adopter dies does not and cannot take title by inheritance in any property, community or separate, of the adopting person. Article 43, R. S.; Eckford v. Knox, 67 Tex. 200, 2 S. W. 372. Article 43, supra, expressly declares, as will be observed, that any child so adopted shall be entitled "to all the rights and privileges, both in law and equity, of a legal heir of the adoptive parent, as a child has by law against legal parents." The article is cumulative to article 2578, R. S. It is therefore believed that the trial judge has correctly decided that the conveyance by Willie Jackson, the adopted heir, to appellee was valid and passed to appellee the one-half interest in the land of William Smith, the adopter.

The judgment is accordingly modified so as to adjudge the appellee George Carter a recovery of a one-half undivided interest in the land and the appellants a recovery of the remaining one-half interest in the land. The appellants are not adjudged any rent, but are here adjudged a recovery of $39.50, being the value of one-half the merchantable timber sold by appellee George Carter. The jury found that George Carter had sold 39½ thousand feet of merchantable pine timber worth $2 per thousand feet. The appellee will pay cost of appeal. As modified the judgment will be affirmed.