## HUMBLE OIL & REFINING CO. et al.
### v. PARISH et al.
#### No. 5669.

Court of Civil Appeals of Texas. Texarkana.

Nov. 27, 1940.

Rehearing Denied Dec. 19, 1940.

Sewell, Taylor, Morris & Connally, of Houston, Hurst, Leak & Burke, of Longview, Foster T. Bean, of Kilgore, and Nelson Jones, E. E. Townes, and R. E. Seagler, all of Houston, for appellants.

Huffman & Huffman and P. O. Beard, all of Marshall, for appellees.

WILLIAMS, Justice.

Annie Parish and husband, plaintiffs below, recovered of Humble Oil & Refining Company, J. A. Knowles, and others not necessary to name, defendants below, title and possession to a 11/100 acre parcel of land out of the J. A. Knowles 100-acre tract, situated in the Mary Van Winkle Survey. In 1918 Knowles conveyed to Annie a part of the 100-acre tract. The deed describes the land so conveyed as fol-

lows: "Beginning on the —— line of J. A. Knowles' land, known at the Dickson land, witness red oak W. 22 feet; thence West 210 feet for corner; thence N. 47½ E. 210 ft. stake; thence East 210 ft. stake; thence S. 47½ ft. W. 210 ft. to place of beginning, containing one acre."

Through 1930–31 Annie and husband executed certain mineral deeds which purported to convey to one Ramsland all minerals under a tract of land. He in turn in September 1931 conveyed to the Humble Oil & Refining Company. In 1932 Annie and husband sued Ramsland and said oil company in trespass to try title and to cancel above mineral deeds. Ramsland disclaimed. In that suit which proceeded to trial against said oil company, plaintiffs were denied a recovery. The judgment in that cause will hereafter be referred to as the Parish-Ramsland judgment. The field notes set out in the judgment, in the pleadings of that cause, in the mineral deeds into Ramsland and out of him, are identical to those contained in the Knowles deed to Annie.

Within a year after the execution of the Knowles deed, Annie went into possession of a part of the 100-acre tract. As found by the court, she enclosed with a fence a parcel of land described as follows: "Beginning at a buggy axle near a clump of black gum trees; thence S. 86 deg. 33 mins. W. 160.2 ft; thence S. 65 deg. 32 mins. W. 99.1 ft; thence S. 45 deg. 33 mins. W. 145.1 ft; thence E. 243.4 ft; thence N. 36 deg. 52 mins. E. 184.2 ft. to place of beginning."

This finding is not attacked. For brevity, this fenced land will be referred to as the pentagon-shaped tract, and the land described in Knowles' deed as the parallelogram tract.

In the present trespass to try title cause, alleging same in the usual statutory form and specially pleading and relying upon a 10-year limitation title, plaintiff describes a 1.8-acre tract of land by metes and bounds which included above-described fenced land together with other land claimed to have been enclosed with a fence, and sued for same less that portion thereof, if any, described in the Parish-Ramsland judgment. Defendant oil company answered with general demurrer, general denial, plea of not guilty, and the special plea of the 5-year statute of limitation. The other defendants answered substantially the same.

The court found that defendant Knowles employed the surveyor Choice to survey in 1918 1 acre out of his 100-acre tract for the purpose of locating on the ground a tract to be conveyed to Annie; Choice went upon the ground and made a survey, using the south line of the Knowles tract as the south line of the tract he was surveying, and setting an iron stake at each of the four corners marked by him; the fence erected by plaintiff did not follow the line run by Choice on all four sides; the fence did follow, in part, the south line of the 100-acre tract; the northeast corner of the tract, as fenced, was at the stake (the buggy axle) set by Choice for the northeast corner of the tract conveyed by Knowles to Annie; but the remaining corners and lines, as fenced, did not conform to the survey as made by Choice on the ground. The court also found that all parties, including plaintiffs and defendants, have, since 1918, acquiesced in the fence lines enclosing the pentagon tract as the true boundary lines and have considered said fence lines as marking upon the ground the tract conveyed by Knowles to Annie; that defendants had acquired a limitation title to all lands immediately adjoining the pentagon tract on the east, north and west sides thereof; that Annie had by adverse possession acquired title to all the land within the pentagon description, but by valid conveyances and the Parish-Ramsland judgment she had been divested of title to the parallelogram tract. Plaintiffs were awarded title and possession as against all defendants to the following tract of land:

"A part of the Knowles 100-acre tract out of the Mary Van Winkle Survey,— Beginning at a stake in the north margin of the public road * * * which beginning point is 204.2 feet south 36 deg. 52 mins. west from an iron buggy axle. * * * Thence North 36 deg. 52 min. east along an old fence line a distance of 204.2 feet to said iron buggy axle stake; thence South 47 deg. 30 min. west 246 feet to a stake in the north margin of said road; thence East with the north margin of said public road 57 feet more or less to the place of beginning, and containing eleven-one hundredths (11/100) of an acre of land, more or less."

It is to be observed that recovery of the wedge-shaped tract of land is the area between the east line of the parallelogram tract reading, "Thence S. 47½ ft. W." and the east line of the pentagon tract which reads, "Thence N. 36 deg. 42 mins. E."

Under their first two propositions defendants claim that the conveyance from Knowles to Annie included above wedge-shaped parcel because said strip is within the boundaries run and marked on the ground by the surveyor who prepared the field notes in said deed, and the same is within the boundaries fixed by agreement of the parties and by long acquiescence and recognition of all interested parties. Above propositions, germane to assignments of error in which they attack the court's findings, are predicated upon their claim that the evidence is undisputed that the fence enclosing the pentagon tract followed the footsteps of the surveyor.

Litigants agree that the above-mentioned iron buggy axle was set by Choice in his survey to mark the northeast corner of the tract to be conveyed to Annie. All other objects called for in the description in the Knowles deed have disappeared. In the development of the area for oil, the fences erected by Annie have been destroyed, and a drainage ditch in the southeastern area of the tract has been either constructed, enlarged or changed. Other changes and construction of buildings and fences along the western side have also been made. Post holes visible at places remained to mark the fences erected by Annie. Defendant Knowles claims he was present when Choice surveyed the land and saw him set an iron stake at each corner. He testified that, from his memory and from his recent inspection of the land, Annie's fence had been erected upon the identical lines run by Choice. On cross-examination he said, "I was there when the survey was made, I think I was"; "Wouldn't be dead positive I was there, but I think I was there." Defendants' witness Laird, the chain carrier, testified that Knowles was not present when Choice made the survey. Laird was fifteen years of age at the time of the survey. Shortly before this trial Laird returned from his home in Houston, Texas, and after a visit upon the ground testified, "as near as I could tell," the pentagon-shaped tract marked the lines run by the surveyor in 1918. He thought they began at the buggy axle and then chained back to the railroad. Choice had instructions to run parallel to the railroad which crossed Knowles' land in a SW-NE direction, and to survey out an acre of land. He used the necessary surveying equipment for this purpose. He prepared the field notes from his survey. These field notes were used in the Knowles deed which describes a perfect parallelogram with its east and west boundary lines running parallel to the course of the railroad.

Such instructions and such field notes as prepared; a pentagon-shaped tract of land fenced; the lapse of time between 1918 and the time Laird and Knowles later visited the premises; the absence of the bearing tree and three iron stakes; the changed physical condition of the premises; Laird's age in 1918; and Knowles being a party defendant, were all factors to be weighed by the court. The court refused to find, as requested by defendants, that above-described wedge-shaped parcel was a part of the land surveyed by Choice. The above brief summary of facts bearing upon this issue presented a question of fact, and the court's findings will not be disturbed.

We need not determine whether or not the evidence is sufficient to support the court's finding that the parties had acquiesced in the fence lines as marking upon the ground the tract conveyed by Knowles to Annie. We need not discuss the exceptions and attack made by plaintiffs upon this finding. The field notes prepared by the surveyor and included in the deed certainly do not describe the land so fenced. This is not a suit to reform the Knowles deed. As stated in Davis v. George, 104 Tex. 106, 134 S.W. 326, 328, "parol evidence * * * cannot make [a deed] convey land which it does not purport to convey nor prevent it from conveying that which it does clearly purport to convey." Defendants rely upon Gill v. Peterson, 126 Tex. 216, 86 S.W.2d 629, 632, wherein it is held that parol evidence is admissible to show where on the ground a survey was actually made, when the calls in the field notes or deed are conflicting or ambiguous, or when the effort to apply the description to the ground gives rise to ambiguity. "The purpose of admitting the parol evidence under such circumstances 'is not to override that which is written, but to properly interpret it.'" There is no ambiguity on the face of the Knowles deed that would call for any explanation. Litigants agree that the buggy axle now at the northeast corner was set by the surveyor Choice. The land called for in that deed can be located by course and by the call to the south boundary line of the Knowles 100-acre tract. The field notes when applied to the ground do not give rise to a latent ambiguity to be removed by parol

evidence showing an intention not clearly expressed within the four corners of this deed. Huddleston v. Allen, Tex.Civ.App., 85 S.W.2d 1094; Humble· Oil ·& Refining Co. v. Johnston, Tex.Civ.App., 76 S.W.2d 818; Sun Oil Co. v. Smith, Tex.Civ.App., 113 S.W.2d 683; Frost Lbr. Industries v. Brantley, Tex.Civ.App., 109 S.W.2d 999; 14 T.J. p. 1045, § 251.

An oil and gas lease executed by defendant Knowles, acquired by defendant oil company in January 1931, forthwith filed for record, includes by metes and bounds his original 100-acre tract. Later, defendant oil company acquired in September 1931, an oil and gas lease covering a 7-4-acre tract executed jointly by Knowles and the railroad company; and in October 1931 acquired an oil and gas lease covering a 3.8-acre tract, and as above noted, acquired in 1931 the Ramsland mineral interest. All these tracts are within the field notes of the 100-acre tract.

The court found "since 1931 defendant oil company has drilled twenty-five wells on the Knowles 100-acre tract, and has spaced said wells with reference to the outside boundaries and has treated all the land within these boundaries as a part of its 'Knowles lease,' including the land in controversy." "That no well has been drilled on the land recovered herein by plaintiffs but defendants have continuously produced oil since October 1931 from wells drilled on the surrounding land of the Knowles 100-acre tract, a period of more than five years and has paid all taxes due on the mineral estate before delinquency, and that the field notes of the Knowles lease under which defendant oil company claims, includes the land in controversy." The court found that defendant oil company had perfected title under the 5-year statute to the oil, gas and mineral leasehold estate in the entire 100-acre tract, except the wedge-shaped tract recovered by plaintiffs.

 This action of the court which denied defendant oil company the title to the wedge-shaped tract under its 5-year plea of limitation is sustained. Vernon's Ann.Civ.St. art. 5509. It is without dispute that Annie included same within her fence lines and has since continuously occupied and had adverse possession of same. Her title had ripened by 1930 into a 10-year limitation title. Vernon's Ann.Civ.St. art. 5510. She used this property as a home and has up to the present resided in her cabin situated within the pentagon tract.

Defendant oil company, as connoted from the court's finding, never took actual adverse possession of the wedge-shaped tract. As stated in Word v. Box, 66 Tex. 596, 3 S.W. 93, 98, applicable here, "In such cases, to enable the junior grantee to sustain a plea of limitation, it is not enough that he show that he has had possession of that part of the grant not in conflict, but he must show an adverse actual possession of that part of his grant in conflict with the elder. Mere color of title, unaccompanied by an actual adverse possession of some part of the land to which the color of title relates, is of no efficacy."

To the same effect see Turner v. Moore, 81 Tex. 206, 16 S.W. 929; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 136 S.W.2d 207; Broughton v. Humble Oil & Ref. Co., Tex.Civ.App., 105 S.W.2d 480.

The judgment is affirmed.