Elvis W. MEINERS, for Himself and as Independent Executor of the Estate of Julia Meiners, Deceased, et al., Appellants,

v.

TEXAS OSAGE COOPERATIVE ROYAL-TY POOL, Incorporated, et al., Appellees.

No. 5256.

Court of Civil Appeals of Texas.

El Paso.

Jan. 8, 1958.

Rehearing Denied Feb. 19, 1958.

Charles L. Krueger, Cecil C. Rotsch, Austin, for appellants.

House, Mercer & House, San Antonio, for appellees.

WILLIAMS, Justice.

This suit was instituted by appellant, Elvis W. Meiners, for himself and as independent executor of the estate of Julia Meiners, deceased, as well as testamentary trustee of the Julia Meiners testamentary trust, and also as sole heir of the estate of Louis Heller, deceased, to quiet title, remove clouds from title, and for damages. Trial was had before a jury. At the conclusion of the evidence both parties stated in open court that there were no issues of fact to be submitted to the jury, whereupon the trial judge withdrew the case from the jury and rendered judgment in favor of appellees.

At the close of the evidence, the plaintiff took a nonsuit as to that part of his suit wherein he claimed to be "sole heir of the Estate of Louis Heller." At the trial it was stipulated that before the transactions hereinafter related took place, Louis Heller was the owner of two sections of land in Upton County, Texas, which formed the basis of this law suit, and as such he was the common source of title for both plaintiff and defendants. The purpose of this suit was to determine the ownership of one-half of the minerals under this land, the lease next referred to having terminated.

On March 13, 1926, Mr. Heller executed an oil and gas lease on this property to one W. R. Chancellor. The primary term was ten years. The lease provided for one-eighth of the proceeds of the oil and gas produced to be paid to the lessor. The lease expressly allowed either party the privilege of assigning his estate in whole or in part.

On or about May 2, 1929, there was formulated and created a trust association known as Texas Osage Cooperative Royalty Pool. The first paragraph of this trust agreement is as follows:

"A declaration of trust made this second day of May, A. D. 1929, creating a trust to be known as the Texas Osage Co-operative Royalty Pool for the purpose of owning, holding, developing and exploiting for the benefit of its certificate holders, oil, gas and other mineral interests in Texas lands."

Other excerpts from this trust agreement will be referred to and quoted hereafter. Another association, known as Flag Oil Company of Texas, was created about this time. Later, these two associations incorporated and became the defendants in the suit below.

On February 26, 1930, Mr. Heller conveyed an undivided one-half interest in and to all of the oil, gas, sulphur and other minerals that may be produced from the land, to Texas Osage Cooperative Royalty Pool and Flag Oil Company of Texas, by an instrument which, at least in form, was a full and complete mineral deed. This instrument recited that the conveyance was made subject to the W. R. Chancellor lease, but the conveyance covered and included one-half part of all the oil royalty and gas rental, or royalty due or to become due under the terms of said lease, and further provided that in the event the Chancellor lease, for any reason, became canceled, forfeited or inoperative, then the lease interest

on said lands for oil, gas, sulphur and other mineral rights or privileges "shall be owned jointly by grantor and grantees, the said grantees owning an undivided one-half interest in all of the minerals."

On December 2, 1930, Louis Heller conveyed the land in question, by warranty deed, to Mrs. Julia Meiners. No mention was made in the deed of the Chancellor lease or the mineral deed, but both instruments had been duly recorded in Upton County, Texas.

The appellant, plaintiff below, claims that the court erred in not granting judgment for him, mainly because he says that no title to the minerals passed by the—what he terms "so-called mineral deed"—executed by Heller to the Osage Pool and Flag Oil Company above referred to, because: (1) he had no title, at the time, to said minerals, because he had theretofore conveyed them to Chancellor by the lease above referred to; (2) the so-called "mineral deed" was not a deed, but was a part of an executory contract because it was coupled with the Osage trust agreement above referred to. Appellant contends that the conditions in these instruments were conditions precedent and were never complied with, and, therefore, title never passed. (3) He further contends that, by the deed from Heller to Julia Meiners above referred to Heller, as a matter of law, abrogated and rescinded said contract. We will discuss the above contentions in order:

(1) Appellant's proposition that Heller owned no interest in the minerals because of his lease to Chancellor is thought to be entirely without merit as he, at that time, certainly had a determinable fee estate with a reversionary interest which he could convey. 31–A, Texas Jurisprudence, 192 and 195; Murphy v. Dilworth, 1941, 137 Tex. 32, 151 S.W.2d 1004.

(2) For the contention that the so-called mineral deed must be read in conjunction with the trust agreement, and that the two constitute only an executory contract, appellant must rely on the language of the two instruments. The so-called mineral deed above referred to is regular in form and states the consideration to be $1 and other good and valuable consideration. The only language in it that lends any weight to appellant's contention that it must be read in conjunction with the trust agreement is the regular and customary clause granting the right of ingress and egress for the purpose of mining, drilling, exploring said land for oil, gas, sulphur, etc. We do not think that the granting of this right of ingress and egress or right to drill, etc., could possibly be construed to be a condition precedent or a promise to drill or explore for oil, etc.

The purpose of the trust is declared to be:

"The purpose of the creation of this trust is to bring together and hold oil and gas royalties and mineral interests in lands in the various counties of the State of Texas, and to manage, control and exploit said interests and to collect the revenue therefrom and to make distribution of the net proceeds from time to time to the certificate holders as herein provided."

Appellant's brief contains the following:

"Thereafter, on or about the 2nd day of December, 1930, when Louis Heller discovered that Texas Osage Cooperative Royalty Pool and Flag Oil Company of Texas had no machinery, tools or equipment whatsoever and no money or means to effectively and efficiently exploit and explore said land for oil, gas and other minerals, and that they did not intend to do so at the time that they induced him by their said declaration of trust agreement to enter into the contract with Texas Osage Cooperative Royalty Pool and Flag Oil Company of Texas, he thereupon rescinded and abrogated the contract on the ground of fraud, by selling and conveying the property and premises involved in this suit to Julia Meiners

for and in consideration of $9,600.00 to him in cash in hand paid, and thereby ended and terminated the contract. Clark v. Texas Co-op. Inv. Co. [Tex. Com.App.], 231 S.W. 381."

Throughout his brief, appellant takes the position that the trust agreement above referred to was an obligation to drill and explore for oil and other minerals, and that the obligation was a condition precedent to title to the minerals passing. We do not construe the trust agreement to contain any promise to drill or explore for minerals or to contain any condition precedent. We do not think this could possibly have been the purpose of the trust agreement because, at the time Heller transferred to these holding companies, he did not even have a right to drill or explore for oil because he had given that right exclusively to Chancellor by the lease herein referred to. Consequently the holding companies had no legal right to drill, or explore the land for oil or other minerals.

Another paragraph in the trust is as follows:

"The whole number of units of interest represented by the participation certificates authorized to be issued under this declaration of trust shall be Two Thousand Two Hundred Twenty-nine (2,229) shares of headrights with no par value."

It was established at the trial that only about one-third of this number of shares of headrights were obtained. Appellant contends that this, also, was a condition precedent, and that they were required to obtain the full 2,229 shares. With this we cannot agree. The agreement authorized them to obtain that number of shares, but nowhere in the document do they promise to do so, or obligate themselves to do so as a condition precedent. For his contention that these two instruments constitute an executory contract, appellant relies almost entirely on Spiller v. McGehee, Tex. Civ.App., 68 S.W.2d 1093, and Farmers Royalty Holding Co. v. Anglin, Tex.Civ.

App. Texarkana 1947, 205 S.W.2d 410. We do not consider these cases authority for his proposition because they are distinguishable on the facts. In the first case it was definitely provided that the drilling should start within twelve months. This provision was not complied with, and the court held that the conveyance was made subject to that condition. The Anglin case is distinguishable from the instant one in several respects. In the Anglin case all instruments were executed at the same time and place, and, in the Anglin case [205 S.W.2d 411] it is stated:

"The contract contemplated a minimum of 5,000 full mineral shares to complete the pool, and only then provided its location is such as to be advantageous to the company to be organized."

This language makes it clear that there were conditions precedent in the deed and in the contract agreement, and the court held that the two instruments, construed together, constituted an executory contract. The other cited cases are to the same effect. In the instant case we have no such situation. The trust associations were already in existence when Heller executed his mineral deed to them. It was not executory in nature and was no part of an executory contract. The provisions in it and in the trust agreement were conditions subsequent, and not conditions precedent. 10 Texas Jurisprudence, pages 343–344.

We therefore hold that title to one-half of the minerals passed by Heller's deed, and that same had not been set aside at the time of this suit and, therefore, remained in full force and effect. Therefore, Julia Meiners never acquired any interest to this one-half of the minerals, the basis of this suit.

▉ (3) For the third proposition, appellant says that, after Heller discovered that he had been defrauded, he conveyed the land in fee to Julia Meiners and, there-

by, as a matter of law, rescinded the so-called executory contract.

■ We cannot agree with this proposition for several reasons. As above shown, the case was withdrawn from the jury and, therefore, there is no finding of fraud, and we certainly do not find it established as a matter of law. The burden was on appellant to establish fraud, and this he did not do. 14–B Texas Jurisprudence, 457–458; 20–A Texas Jurisprudence, 257, sec. 142.

In fact, we construe the above purpose of the trust agreement to be that they were to hold the land; to lease and manage it; and share the proceeds with all holders of the certificates. The undisputed evidence shows that this was done. Hence, we think that even a failure of consideration is not established. Heller received his two head-right certificates and retained them, at least until about the time he executed the deed to Julia Meiners, when he evidently endorsed them in blank and sent them to the parent company. Why he did this is not shown or established by finding. He received and retained several dividend payments. Although they were rather small in amount, they were payments and were received and kept by him without complaint. For his contention that the deed from Heller to Julia Meiners ipso facto rescinded the contract between Heller and defendants, appellant relies largely on Clark v. Texas Co-op. Inv. Co., Tex.Com. App., 231 S.W. 381; but that case is not authority for any such proposition. It merely holds that one who has been defrauded into entering into a contract may, at his option, rescind it. There is no finding in this case that Mr. Heller intended for his deed to Julia Meiners to rescind the contract, even if it could be considered as executory in nature. In fact, the indications in the record, as above discussed, lead to the conclusion that he was satisfied with the arrangement. Besides that, the record indicates that Julia Meiners was satisfied with it, because she joined in a lease with the appellees herein after she received the deed from Heller, thereby indicating that she approved of the agreement, and certainly refuting any contention that she and/or Heller, as a matter of law, intended for the deed from Heller to her to operate as a rescision. The law of Texas is well settled that a deed obtained by fraud can only be set aside by a suit for cancellation and a decree annulling and cancelling the deed. Deaton v. Rush, Tex. Com.App.1923, 113 Tex. 176, 252 S.W. 1025; Smith v. Carter, Tex.Civ.App. Texarkana 1930, 45 S.W.2d 398 (error dismissed).

These cases, along with many others, also hold that such an action can be brought only by the party defrauded. This, likewise, is the settled law in Texas. The appellant herein, after he dismissed that part of his suit wherein he claimed to be the sole heir of Louis Heller, stood only in the shoes of Julia Meiners, to whom Heller had deeded the property, and therefore he was not the party defrauded and would not have been eligible to bring a suit to set aside the above deed had it been procured by fraud. See also, Hughes v. Wright, Tex.Civ.App. Ft. Worth 1939, 127 S.W.2d 215. (Note that this suit was to remove clouds, etc., and not to set aside a deed.) Therefore, we hold that there is not merit to any of these contentions of appellant, and all points based thereon are hereby overruled.

■ By Point VI, appellant claims the court erred in admitting in evidence a photostatic copy of an oil, gas and mineral lease (above referred to), executed by Julia Meiners, W. A. Meiners, Texas Osage Cooperative Royalty Pool, and Flag Oil Company of Texas, to W. M. Holland, dated July 2, 1934. Appellant says that the instrument was inadmissible because it had been materially altered after Julia Meiners signed it. For this contention he argues that it was apparent from the face of the instrument that the latter two names had been written in on a typewriter different from the one which wrote the first

two names, and he therefore says it was apparent from the face of the instrument that it had been materially altered. We find no merit in appellant's contention because there is no finding of fact that the instrument had been altered, and we certainly do not find it established as a matter of law.

 By Points IX, X, and XI, appellant contends that Julia Meiners' claims of title by limitation of three, five and ten years, respectively, should have been sustained, since she had held the property since December 30, 1930 by general warranty deed from Mr. Heller to her. At the trial, the parties stipulated that no oil or gas, or other minerals, were ever extracted or produced from the property involved prior to the date the suit was filed. We hold that the mineral deed from Heller to Texas Osage Cooperative Royalty Pool and Flag Oil Company of Texas, dated February 26, 1930, severed the minerals from the land, and the law in Texas is well settled, that:

> "After the severance of the surface and the mineral estate, the possession of the one will not ripen into a limitation title of the other. So, after severance of the oil and gas estate, adverse possession of the surface is not adverse possession of the minerals." 31–A, Tex.Jur. 43–44. See also, 2 Tex.Jur. 118, sec. 62.

In the recent case of Carminati v. Fenoglio, Tex.Civ.App. Ft. Worth 1954, 267 S.W.2d 449, 454 (ref. n. r. e.), says:

> "Limitation can be asserted against the owner of a severed mineral estate by the surface holder only by taking actual possession of the minerals for the statutory period."

Therefore, we hold that the court did not err in overruling appellant's claims of title by limitation.

Appellant's other points complain of the admission or rejection of certain evidence, but we find no merit in any of them.

Finding no reversible error in any of the rulings of the trial court, its judgment is affirmed.