HUNT OIL CO., et al.,
Appellants-Appellees,

v.

Willis MOORE, Trustee,
Appellee-Appellant.

Nos. 1464, 1450.

Court of Appeals of Texas,
Tyler.

Aug. 4, 1983.

Rehearing Denied Sept. 7, 1983.

Drew R. Heard, Allen Weed, Shank, Irwin, Conant, Williamson & Grevelle, Dallas, for appellants-appellees.

Edward Kliewer, Jr., Frank G. McDonald, Kliewer & Hood, Dallas, for appellee-appellant.

SUMMERS, Chief Justice.

This case is a consolidation of two appeals from the same judgment. This court in an earlier opinion dismissed the appeal of Hunt Oil Company (Cause No. 1464) for want of jurisdiction.[1] Pursuant to the Texas Supreme Court's mandate we now consider the merits of each appeal.

Willis Moore, Trustee (hereinafter Moore), brought suit on July 7, 1970, against Hunt Oil Company and others (hereinafter Hunt) seeking to have a lease declared terminated, cloud on title removed, and title quieted in himself. Moore, relying upon a subsequently acquired mineral deed, claimed that a certain oil and gas lease (covering an undivided one-tenth mineral interest in approximately 92 acres in the Fairway Field in Henderson County, Texas) had lapsed. Moore alleged that the acreage of the lease, which named Hunt as lessee, was pooled in an unauthorized manner into two units of approximately 160 acres each and thereafter terminated despite produc-

---

[1]. See *Hunt Oil Company v. Willis Moore,* 629 S.W.2d 260 (Tex.App.—Tyler 1982, *rev'd and* *remanded with per curiam* 639 S.W.2d 459 (Tex.1982).

tion from the two unit wells located on lands adjacent to the tract in which he claims an interest. Moore also alleged that he was entitled to an accounting for the production attributable to this mineral interest. In his original petition, Moore (disclaiming any intent to ratify the unit agreements)[2] requested that the trial court award him judgment for the value of all of the oil, gas and other minerals attributable to his one-tenth (9.2 acre) mineral interest produced after May 16, 1962, from the Hunt-Milner, Atlantic-Milner and Fairway Units, together with interest thereon at 6% per annum from the several dates on which production occurred.

Both Moore and Hunt filed motions for summary judgment. On April 5, 1979, the trial court overruled Hunt's motion and sustained Moore's motion and entered a partial summary judgment for Moore. Such summary judgment declared the lease of May 15, 1961, terminated, quieted title in Moore, ordered the cloud removed and an accounting by Hunt to Moore for all oil, gas and other minerals produced attributable to Moore's mineral interest from such three units and costs of suit. After Hunt's completion of the accounting and further discovery proceedings, the court on May 16, 1980, rendered a final judgment, ordering the relief granted in the partial summary judgment and also ordering that Hunt pay Moore the sum of $377,058.52, 9% per annum post-judgment interest and costs of suit. The court denied Moore's claim for pre-judgment interest. From this adverse judgment, Hunt appealed in Cause No. 1464; Moore appealed in Cause No. 1450 from the court's failure to award prejudgment interest.

The judgment is affirmed in part, reversed and rendered in part.

The undisputed facts as developed by the summary judgment evidence reflect that Bill DeWayne Hamilton, a minor, owned a one-tenth (9.2 acre) mineral interest in cer-

tain property composed of about 92 acres located in Henderson County, Texas. On May 15, 1961, Willie Mae Hamilton, guardian of his estate, executed an oil and gas lease covering two tracts comprising said 92 acres (hereinafter 92-acre tract) with Hunt Oil Company as lessee (the Hamilton-Hunt lease). The primary term of the lease was for five years from May 15, 1961, and as long thereafter as either oil, gas or other mineral is produced "from said land hereunder or land pooled therewith." The lease provided for the payment of annual delay rentals which were not paid. The record also shows that no wells were drilled upon the 92-acre tract covered by said lease.

The facts further reflect that the lessor, Bill DeWayne Hamilton, and his guardian, Willie Mae Hamilton, did the following acts after May 16, 1962, in relation to the land covered by the Hamilton-Hunt lease:

1. Between February 13 and April 15, 1963, Willie Mae Hamilton as guardian of Bill DeWayne Hamilton, executed a Hunt division order relating to production on the Atlantic-Milner Unit.

2. Between May 28 and July 1, 1963, Willie Mae Hamilton as guardian of Bill DeWayne Hamilton, negotiated a check issued by Hunt for royalty paid under the lease.

3. On August 20, 1966, Bill DeWayne Hamilton executed a top oil and gas lease to Willis Moore, as trustee for Travis Ward (Hamilton-Moore lease) which provided in paragraph 12 in *pari materia:* "lessors expressly ratify and confirm such Fairway Field-wide Unit agreement dated October 1, 1963."

4. Between October 31 and November 9, 1966, Willie Mae Hamilton executed a division order of Mobil Oil Corporation pertaining to production on the Hunt-Milner Unit.

**2.** Moore in paragraph 5 of his original petition stated "Plaintiff, but only upon the condition that the relief herein prayed for is granted, agrees to ratify and confirm the Declaration of the Hunt et al-Milner Unit, the Declaration of the Atlantic et al-Milner Unit and the Unit Agreement and Unit Operating Agreement for the Fairway (James Lime) Unit."

5. Between November 16 and November 23, 1966, Willie Mae Hamilton and Bill DeWayne Hamilton negotiated a Mobil Oil Corporation royalty check representing production from the Hunt-Milner Unit.

6. On April 22, 1969, Bill DeWayne Hamilton executed a mineral deed conveying to Moore his one-tenth mineral interest in the 92-acre tract.

Appellant Hunt predicates its appeal (Cause No. 1464) upon nine points of error, alleging that the trial court erred as a matter of law: (1) in denying Hunt's motion for summary judgment; (2) in failing to grant Hunt's motion for summary judgment because the Hamilton-Hunt lease was properly pooled and never expired; (3) in failing to grant Hunt's motion for summary judgment because the lease and the unit agreements covering the lease were revived and ratified by Hamilton and his successors; (4) in failing to grant Hunt's motion for summary judgment because Hunt matured title to the Hamilton-Hunt leasehold estate by adverse possession; (5) in granting partial summary judgment for Moore due to the existence of genuine issues of material fact; (6) in granting partial summary judgment for Moore because there existed genuine issues of material fact with regard to: A. The intent of the parties to the lease; B. Revival and Ratification of the Hamilton-Hunt lease; C. Hunt's adverse possession of the mineral estate claimed by Moore; D. The tolling of the Statute of Limitations; (7) in granting Moore an accounting because there is no basis in law for an accounting to Moore by Hunt; (8) in granting Moore's motion for final judgment and rendering judgment for Moore because there were disputed issues of material fact and the basis for Moore's motion was erroneous; and (9) in rendering a monetary judgment for Moore based upon Hunt's accounting because there is no basis in law which permits such a recovery.

Moore brings his appeal (Cause No. 1450) on one point of error; asserting that the trial court erred in denying him a recovery of pre-judgment interest.

Hunt's points 1, 2, 5 and 6A all concern the central issue as to the effectiveness of the pooling of the Hamilton-Hunt lease acreage into producing units. The trial court granted Moore's motion for partial summary judgment on the basis that Hunt's oil and gas lease on the tract in question had terminated on May 16, 1962, due to unauthorized pooling, principally relying on *Jones v. Killingsworth,* 403 S.W.2d 325 (Tex.1965). Hunt contends *Jones* is not controlling, arguing that the lease was properly pooled and sustained by production on the Hunt-Milner and Atlantic-Milner Units.[3] In points 5 and 6A Hunt argues that a material issue of fact exists concerning the *intent* of the parties to the Hamilton-Hunt lease. Such argument is conclusionary, points to no competent summary judgment evidence to suggest ambiguity and refers to no supporting authorities. It is Moore's position that the Hamilton-Hunt lease terminated on May 16, 1962, *unless* the attempt to include such lease into the 160-acre Atlantic-Milner Unit or the 159.-186-acre Hunt-Milner Unit was a valid exercise of the pooling clause. The pooling clause contained in paragraph six of the Hamilton-Hunt lease provides, in pertinent part:

*Lessee is hereby granted the right* as to all or any part of the land described herein, without Lessor's joinder, *to combine, pool or unitize the leasehold estate* ... with any other land, lease or leases, ... so as to create, by the combination of such lands and leases, one or more operating units, *provided that no one operating unit shall,* ... *in the case of oil,* ... *embrace more than forty (40) acres;* and provided further, however, that if any spacing or other rules and regulations of the State or Federal Commission, Agency, or regulatory body having or claiming jurisdiction has heretofore or shall at any

3. The Atlantic-Milner Unit was unitized on September 8, 1961; the Hunt-Milner on October 11, 1961.

time hereafter *prescribe* a drilling or operating unit or spacing rule ... in the case of oil ... *greater than forty (40) acres*, then the unit or units herein contemplated may have, or may be redesigned so as to have, as the case may be, the same surface content as, but not more than, the unit or the acreage in the spacing rule *so prescribed*. (Emphasis added.)

On March 14, 1961, the Railroad Commission of Texas issued Special Order No. 6–45,322 with a February 13, 1961, effective date, providing temporary field rules for the Fairway (James Lime) Field. Such temporary field rules were continuously applicable with respect to the Hamilton tract, the Atlantic-Milner and Hunt-Milner Units. The temporary field rules[4] are the same as those invoked in *Jones, supra*. The Railroad Commission by Special Order No. 6–48,482 on May 23, 1962 (such date being *after* termination of the Hamilton-Hunt lease) adopted operating field rules, replacing the temporary rules that were operative at the time of the unitization of the Hunt-Milner and Atlantic-Milner Units.

In *Jones,* the oil and gas lease was pooled during the primary term, into a unit of approximately 170 acres. Like the instant case no well was drilled on the actual acreage described in the lease, but production was obtained on the unit. The habendum clause of the lease in *Jones* as in the case at bar provided that production on land pooled with the leasehold would sustain the lease beyond the primary term. The pooling provisions of the lease in *Jones* provided, in pertinent part:

*Lessee ... is hereby given the right and power to pool or combine* the acreage covered by this lease ... with other land, lease or leases in the immediate vicinity thereof to the extent, hereinafter stipulated, when in Lessee's judgment it is necessary or advisable to do so ... *Units pooled for oil hereunder shall not substantially exceed 40 acres each in area* ... provided that should governmental authority having jurisdiction *prescribe* or *permit* the creation of units larger than those specified, units thereafter created may conform substantially in size with those *prescribed* by governmental regulations. (Emphasis added.)

Such provision contains the phrase "prescribe or permit," whereas in the instant case, the pooling provision in the Hamilton-Hunt lease omits the words "or permit."

The holding in *Jones,* was *not* based on the presence or absence of the word "permit"; rather its basis was that, under the pooling clause, the lessors gave their consent to enlarge a unit of substantially 40 acres, but *only* to the extent of the size of units *prescribed* by the regulatory authority. The court concluded, under the same field rules as in the case at bar, that "[t]he Commission *prescribed* a unit of 80 acres" and no larger. The orders of the Railroad Commission cannot compel pooling agreements that the parties themselves did not agree upon, and the Commission has no power to determine property rights. Applying *Jones* to the instant case, we must conclude that Hunt did not have the power under the lease to pool and unitize the Hamilton 92-acre tract into the Hunt-Mil-

**4.** The material provisions of the temporary field rules are:

Rule 2: The acreage assigned to the individual oil well for the purpose of allocating allowable oil production thereto shall be known as a proration unit. *No proration unit shall consist of more than eighty (80) acres* except as hereinafter provided, and the two furthermost points in any proration unit shall not be in excess of forty two hundred (4200) feet removed from each other; provided, however, that in the case of long and narrow leases or in cases where because of the shape of the lease such is necessary to permit the utilization of tolerance acreage the Commis-

sion may after proper showing grant exceptions to the limitations as to the shape of proration units as herein contained. All proration units, however, shall consist of continuous and contiguous acreage which can reasonably be considered to be productive of oil. (Emphasis added.)

Provided, however, that operators may elect to assign tolerance of not more than eighty (80) acres of additional unassigned lease acreage to a well on an eighty (80) acre unit and shall in such event receive allowable credit for not more than one hundred sixty (160) acres.

ner and Atlantic-Milner units (containing 159.186 and 160 acres respectively). Since the lands were improperly pooled and delay rentals were not timely paid, the habendum clause in the Hamilton-Hunt lease cannot be used to extend the term of the lease beyond May 15, 1962, the terminal date of the primary term of the lease. See also *Atlantic Richfield Co. v. Hilton,* 437 S.W.2d 347 (Tex.Civ.App.—Tyler 1969, writ ref'd n.r.e.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 221, 24 L.Ed.2d 182 (1969). Hunt's points 2, and 6A are overruled.

Hunt in points 3, 5 and 6B contends that the trial court erred, as a matter of law, in failing to grant Hunt's motion for summary judgment because the lease and the unit agreements covering the lease were revived and ratified by Hamilton and his successors. Hunt asserts that genuine issues of material fact existed with regard to ratification or revival. Hunt argues that even assuming the Hamilton-Hunt lease terminated in accordance with *Jones supra,* summary judgment should have been rendered for Hunt because Bill DeWayne Hamilton and his successors revived and ratified the Hamilton-Hunt lease, as well as the units that included such lease.

■ It is Moore's position that Hunt's motion for summary judgment failed to comply with the mandatory requirement of Rule 166–A(c).[5] Moore contends that as the issue of ratification and revival of the Hamilton-Hunt lease was *not* specifically raised by Hunt's motion for summary judgment, such point is without merit and should be overruled, relying on *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 677, 679 (Tex.1979). We agree.

■ Hunt asserts that four key acts raise material issues of fact concerning the ratification or revival of the lease, citing *Yelderman v. McCarthy,* 474 S.W.2d 781 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.); *Leopard v. Stanolind Oil & Gas Co.,* 220 S.W.2d 259 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r.e.); and *Texas & Pac. Coal & Oil Co. v. Kirtley,* 288 S.W. 619 (Tex.Civ. App.—Eastland 1926, writ ref'd). In this connection, the record reflects that Hamilton was a minor when the Hamilton-Hunt lease was executed (May 15, 1961), the guardianship of his estate was closed January 20, 1964, and he attained his majority on June 18, 1964.

The four acts relied on by Hunt are:

(1) Sometime between October 31 and November 9, 1966, Willie Mae Hamilton, as guardian of the estate of the minor Hamilton, executed a Mobil Oil Corp. division order covering the Hunt-Milner Unit.

(2) Sometime between November 16 and November 23, 1966, Willie Mae Hamilton and Bill DeWayne Hamilton negotiated a Mobil Oil Corp. check dated November 16, 1966, in the amount of $16.18 drawn to the order of "Willie Mae Hamilton, Guardian of the Estate of Bill DeWayne Hamilton, a minor."

(3) Execution by Willie Mae Hamilton, guardian of the estate of the minor Hamilton, of a division order between February 13 and April 15, 1963, covering production from the Atlantic-Milner Unit.

(4) Sometime between May 28 and July 1, 1963, Willie Mae Hamilton, guardian of the estate of the minor Hamilton, endorsed and cashed a $4.64 check issued by Hunt Oil Company on May 28, 1963.

The four acts enumerated above, even if properly presented, as a matter of law fail to raise a genuine issue of material fact concerning the defense of ratification or revival of the Hamilton-Hunt lease. Each of such acts occurred after May 16, 1962, the termination date of the Hamilton-Hunt lease. The division order in item (1) was executed not only after such lease terminated but some 33 months after the guardianship was closed. Moreover, such purported

---

5. This and all references to Rules are to Texas Rules of Civil Procedure. Rule 166–A(c) in pertinent part provides:

    Motion and Proceedings thereon. The motion for summary judgment shall state the specific grounds therefor … *Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.* (Emphasis added.)

execution could not have any effect on the lease Hamilton had previously executed to Moore on August 20, 1966. See *Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 114 S.W.2d 226, 235 (1938), *rehearing overruled,* 134 Tex. 332, 136 S.W.2d 207 (1940). The check in item (2) was issued, endorsed and cashed after the Hamilton-Hunt lease terminated and after August 20, 1966 (the date on which the Hamilton-Moore lease was executed), and could have no effect on the lease Hamilton had previously executed to Moore. *Simonds, supra.* At the time the division order in item (3) was executed, the Hamilton-Hunt lease was no longer a "valid" subsisting lease, and the purported execution of such division order could not constitute a ratification or revival of the terminated lease. See Sec. 370 of the Probate Code;[6] *Exxon Corp. v. Middleton,* 613 S.W.2d 240 (Tex.1981). Likewise, the guardian's endorsement and cashing of the check in item (4) did not operate as a ratification or revival of the terminated Hamilton-Hunt lease. See Secs. 367 and 370 of the Probate Code and *Exxon Corp. v. Middleton, supra.*

▮ Hunt urges that a paragraph in the Hamilton-Moore lease (made August 20, 1966) whereby Hamilton as lessor ratified and confirmed the Fairway Fieldwide Unit Agreement dated October 1, 1963, constituted a ratification or revival of the Hamilton-Hunt lease as well as the Hunt-Milner and Atlantic-Milner Units. Such argument is not available to Hunt as it was not specifically stated as a ground in Hunt's motion for summary judgment. Rule 166–A(c), *City of Houston v. Clear Creek Basin Authority, supra.* Moreover, the case of *Westbrook v. Atlantic Richfield Co.,* 502 S.W.2d 551 (Tex.1974), is authority for the position, and we so hold, that Hamilton's ratification of the Fairway Fieldwide Unit agreement dated October 1, 1963, in the Hamilton-Moore lease did not ratify or revive the Hamilton-Hunt lease which had previously terminated on May 16, 1962. Hunt's points 3 and 6B are overruled.

▮ Hunt in points 4, 5 and 6C contends that Hunt acquired title to the Hamilton-Hunt lease by adverse possession by virtue of production from both the Atlantic-Milner and Hunt-Milner Units and that continuous production from the unit wells has drained the common reservoir underlying all tracts, including the Hamilton-Hunt leasehold. Hunt asserts that Art. 5509 [7] establishes the prerequisites for maturing title by adverse possession and contends that all of such requirements under the five year statute have been met. In order to acquire such title, the claimant, in addition to his peaceable and adverse possession, cultivation and use of the land, and payment of taxes, must claim "under a deed or deeds duly registered."

Hunt contends that peaceable possession of the Hamilton-Hunt leasehold commenced in 1961, and that the "adverse" character of Hunt's possession is established by the continuous use, possession, enjoyment, and working of the Hunt-Milner and Atlantic-Milner Units. Hunt urges such possession continued by production for eight years (1962–1970) between the time the Hamilton-Hunt lease allegedly terminated and the filing of this suit. In regard to the payment of ad valorem taxes on the property, the uncontroverted affidavit of John Truett Phillips shows that Hunt paid such property taxes before delinquency on the leases within the Hunt-Milner and Atlantic-Milner Units during said eight year period. Hunt claims title to the Hamilton-Hunt leasehold by virtue of the following instruments recorded in the deed records of Henderson County, Texas: (1) oil, gas and mineral lease from Willie Mae Hamilton, Guardian to Hunt Oil Company dated May 15, 1961; (2) declaration of Unit with respect to the Atlantic-Milner Unit dated September 8, 1961; (3) declaration of Unit, with respect to the Hunt-Milner Unit dated October 11, 1961; and (4) Unit Agreement, Fairway (James Lime) Unit, dated October 1, 1963.

---

**6.** This and all other references to Probate Code are to Tex.Prob.Code Ann.

**7.** This and all other statutory references are to Vernon's Annotated Texas Civil Statutes.

Moore, in response to Hunt's claim of title by adverse possession, contends that Hunt's motion for summary judgment did not state the five-year statute of limitations as a ground and thus Hunt's fourth point should be overruled. Rule 166–A(c); *City of Houston v. Clear Creek Basin Authority, supra.* Hunt in defendant's first amended response to Moore's first amended motion initially presented the issue of the five-year statute of limitations accompanied by the affidavit of Gary Hurford. Moore contends that even if Hurford qualified himself as an expert witness, the affidavit is wholly insufficient to support the affirmative defense of limitations. Hurford's affidavit indicates the James Lime Formation is a continuous reservoir containing approximately 26,893 acres with production from numerous wells in the Fairway (James Lime) Unit, including the wells on the Atlantic-Milner and Hunt-Milner Units. Whether drainage from the Hamilton tract occurred is left to sheer speculation. Any drainage of the Hamilton 92-acre tract which may have occurred could have been caused by production from or injection into some of the many wells in the Fairway (James Lime) Unit other than wells on the Hunt-Milner and Atlantic-Milner Units.

Upon execution of the Hamilton-Hunt lease on May 15, 1961, Hunt acquired constructive possession of the leasehold estate in Hamilton's one-tenth mineral interest. Such possession being in recognition of Hamilton's title, Hunt could not make it a hostile holding without a repudiation of Hamilton's title, evidenced by acts or declarations clearly manifesting such intention. *Killough v. Hinds,* 161 Tex. 178, 338 S.W.2d 707, 711 (1960); *Thompson v. Richardson,* 221 S.W. 952, 953 (Tex.Com.App.1920, judgmt. approved). There is no indication in the record that Hunt intended to repudiate their recognition of Hamilton's title until after this suit was filed.

■ After termination of the Hamilton-Hunt lease on May 16, 1962, Hamilton, the record owner of the severed mineral interest, was in constructive possession thereof. Hunt's argument that they ousted Hamilton's possession of his unleased, severed mineral interest in the Hamilton tract by production of oil and gas from wells located on other land in the Hunt-Milner and Atlantic-Milner Units ignores the requirements of Art. 5509. Hamilton's constructive possession could only be ousted by actual adverse possession of the land claimed—the unleased one-tenth mineral interest in place. *Simonds v. Stanolind Oil & Gas Co.,* 114 S.W.2d 226, 231–232 (Tex.1938); *Humble Oil & Refining Co. v. Parish,* 146 S.W.2d 1045, 1048 (Tex.Civ.App.—Texarkana 1940, writ dism'd judgmt. cor.). The drilling of and production from wells not located on land covered by the Hamilton-Hunt lease was not an actual adverse appropriation of the land described therein and did not constitute a trespass of such mineral interest. *Meiners v. Texas Osage Cooperative Royalty Pool,* 309 S.W.2d 898, 903 (Tex.Civ.App.—El Paso 1958, writ ref'd n.r.e.); *Thomas v. Southwestern Settlement & Development Co.,* 131 S.W.2d 31, 34 (Tex.Civ.App.—Beaumont 1939, writ dism'd judgmt. cor.). Hunt's points 4 and 6c are overruled.

■ Hunt contends under point 6D that Moore's lack of diligence in prosecuting his alleged claim for wrongful appropriation of oil and gas raises the issue as to whether the filing of this action was sufficient to toll the running of Art. 5526(1), the two-year statute of limitations. Hunt did not assert this matter either in their motion for summary judgment or in any of their responses to Moore's motion. Such point is without merit and is overruled. Rule 166–A(c); *City of Houston v. Clear Creek, supra.* Moreover, this point is rendered moot by our disposition of points 7 and 9.

■ Hunt in points 7 and 9 contends that the trial court erred as a matter of law in granting Moore an accounting and in rendering a monetary judgment in favor of Moore. Hunt asserts that there is not a contractual or fiduciary relationship between Moore and Hunt and that the availability of the equitable remedy of accounting depends upon such a relationship.

In paragraph 6 of his original petition, Moore alleged:

Plaintiff is entitled to an accounting from the Defendants . . . , jointly and severally, for all of the oil, gas and other minerals produced after May 16, 1962, from the Hunt et al.-Milner Unit, the Atlantic et al.-Milner and the Fairway Unit which is attributable to the undivided one-tenth (1/10th) mineral interest of Plaintiff in the lands described in Paragraph 2 above, which interest in said production has been wrongfully appropriated by said Defendants to their own unjust enrichment, together with interest thereon at the rate of 6% per annum from the several dates on which such production occurred.

Moore argues that the trial court was correct in allowing an accounting and in rendering the monetary judgment in his favor. He contends that he is entitled to a money recovery based on the value to Hunt of the use which they have wrongfully made of Moore's mineral interest. He further contends that the undisputed facts state and prove an equitable cause of action for unjust enrichment and for money had and received.

Hunt urges that Moore is essentially in the same position as the plaintiff in *Superior Oil Company v. Roberts,* 398 S.W.2d 276 (Tex.1966), wherein the court denied an accounting where the plaintiffs had no contractual relationship with the defendant/lessee. We agree. In *Superior,* the plaintiffs' cotenants had executed an oil and gas lease to the defendant. This lease was pooled by the lessee and production was obtained on the unit but on a different tract than the leasehold in question. The plaintiffs refused to lease their interest or ratify the lease between defendant and their cotenants. The Supreme Court held that because the plaintiffs had no contractual relationship with the defendant/lessee, they were not entitled to an accounting.

In the instant case, no wells in the units were drilled upon, and no minerals were produced from, the 92-acre tract in which Moore holds an undivided interest. The Hamilton-Hunt lease was terminated on May 16, 1962. Neither Moore nor Hamil-

ton, his predecessor in title, have revived or ratified the Hamilton-Hunt lease or the units purportedly covering said lease. No move taken by Hunt acting in connection with the owners of other interests in said units could operate to place Moore's interest under lease or make it a part of a unitized area without Moore's or Hamilton's consent or acquiescence. Neither Moore nor Hamilton had a contractual or fiduciary relationship with Hunt or the owners of interests in the unitized lands which would give Moore rights in and to minerals produced from the units but not produced from the 92-acre tract. Had Hunt produced minerals from the 92-acre tract in which Moore has a one-tenth (9.2 acre) interest in the mineral estate, Hunt would have to account to Moore for his share of the minerals produced less the necessary and reasonable cost of producing and marketing the same. *Superior, supra* at 277. The record is without support for recovery by Moore of a money judgment on the basis of wrongful use or unjust enrichment. In the event Hunt has retained more than their proper share in the division of mineral proceeds between themselves and the royalty owners holding lands within said units, this is a matter between Hunt and such royalty owners and does not affect Moore in any way. Hunt's points 7 and 9 are sustained. At this juncture we overrule Hunt's points 1, 5 and 8 insofar as they are inconsistent with our disposition of points 7 and 9.

Moore (appellant in Cause No. 1450) submits one point of error asserting that the trial court erred as a matter of law in denying him a recovery of prejudgment interest. We overrule this point as being moot in light of our disposition of Hunt's points 7 and 9.

We accordingly reverse that part of the trial court's judgment which ordered that Moore recover a monetary sum with interest from date of judgment until paid together with costs of suit and render judgment denying Moore such recovery. Otherwise, the remainder of the judgment is affirmed.

Since we have affirmed the judgment in part and reversed and rendered in part, we tax the costs on appeal and in the court below equally against the parties. Rule 448; *Walker v. Walker,* 619 S.W.2d 196, 199 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.).