The SUPERIOR OIL COMPANY,
Petitioner,

v.

Newman ROBERTS et al., Respondents.

No. A–10878.

Supreme Court of Texas.

Jan. 6, 1966.

Murray Christian, Thomas H. Lee, Williams, Lee & Lee, Houston, for petitioner.

M. W. Plummer, Sr., Houston, for respondents.

NORVELL, Justice.

This cause presents a question that has not been squarely passed upon by this Court. We find, however, that the Supreme Court of West Virginia has decided the controlling issue in the case contrary to the contentions which respondents here urge. See, Boggess v. Milam, 127 W.Va. 654, 34 S.E.2d 267 (1945). Being of the opinion that *Boggess* was correctly decided, we reverse the judgments of the courts below [1] and render judgment that respondents (plaintiffs in the trial court) take nothing against the petitioner, The Superior Oil Company.

In stating the case, we will use the trial court designation of the parties. Plaintiffs are Newman Roberts, Rosa Lee Hartman and Olen Stafford, the only heirs of Bob Roberts, deceased. In 1947 plaintiffs owned an undivided one-half interest in a tract of one and a half acres of land being Lots 1, 2, 3, 4, 6 and 12 in Block W of the Hawley Addition to the town of Altair, Colorado County, Texas. The other one-half interest in said town lots was owned by James Craven [2] and the defend-

1. The opinion of the Court of Civil Appeals is reported in 390 S.W.2d 550.

2. James Craven was dead at the time of the filing of the suit. His heirs, C. L. Craven, E. J. Craven and Bernice Jackson were named as parties defendant.

ant, Estella Todd, the only heirs of Matilda Joshua, deceased.

On September 29, 1947, James Craven (and his wife, Lovie Craven) executed an oil, gas and mineral lease to The Superior Oil Company purporting to cover all of the six town lots above described.

On October 6, 1947, Estella Todd executed a similar lease to Superior describing the same town lots as the Craven lease.

Both leases contained the following provision:

"Lessor does hereby pool and unitize the lands herein leased and all rights of the lessor therein under the terms of that certain 'Unitization and Unit Operating Agreement in the Altair Field, Colorado County, Texas' made and entered into as of the 10th day of April, 1947. Lessor ratifies, confirms and adopts said agreement and by this reference said lease and all rights of Lessor thereunder are made subject to said agreement. The terms and provisions of said agreement shall supersede the terms and provisions of this lease."

The "Unitization and Unit Operating Agreement" for the Altair Field is a detailed contract of some 37 pages. The area unitized thereby consisted of several hundred acres. Production was obtained from the unit but no wells were drilled on the six Altair town lots in which the plaintiffs own an interest, nor within a distance of 1200 feet therefrom.

It appears that although Superior offered to lease their interest in the six town lots, the plaintiffs refused such offer and never executed a lease agreement and have received no payments from the minerals produced from the Altair Field unitized area. It appears that in accounting for royalty payments. Superior considered the Craven and Todd leases as representing one and a half acres, instead of one-half of one and a half acres,—the actual undivided interest owned by James Craven and Estella Todd at the time of the execution of the leases. It appears that the royalty payment allocated to a one and a half acre interest in the unit was paid to Estella Todd and James Craven (or his heirs) up to the time this suit was filed. Superior retained the working interest share.

The two controlling factors in the litigation are (1) that no wells were drilled upon the lands in which plaintiffs hold an undivided interest and (2) that there existed no contractual relationship whatsoever between plaintiffs and Superior, the operator of the unit.

Plaintiffs do not seek to ratify or adopt the leases executed by Estella Todd and James Craven. They do not claim to be tenants in common with the royalty owners who as lessors executed leases covering lands within the unitized area. There is nothing to show that Superior has prevented plaintiffs from developing the mineral resources of the town lots in any way.

It is plaintiffs' theory that by accepting leases from Estella Todd and James Craven, Superior became a tenant in common with them in the mineral estate underlying the town lots. Plaintiffs equate the pooling of the lots and obtaining production from the unitized area with actual production from such town lots. Of course, had Superior produced from the town lots in which plaintiffs have an undivided one-half interest, it would have to account to plaintiffs for their share of the minerals produced less the necessary and reasonable cost of producing and marketing the same. Cox v. Davison, 397 S.W.2d 200, (Tex.Sup.1965); White v. Smyth, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348.

It is argued that as the Todd and Craven leases purported to cover the entire one and a half acres embraced in the

six town lots and Superior used the one and a half acre factor in accounting to its royalty owners, allocating to itself $\frac{7}{8}$ of a one and a half acre interest in and to the minerals produced from the unitized area, Superior should pay over to plaintiffs $\frac{1}{2}$ of this $\frac{7}{8}$ (working interest) represented by a one and a half acre share in the minerals produced from the unit, less reasonable expenses. We cannot agree with this argument. Obviously any move taken by Superior acting in connection with Estella Todd and James Craven, could not operate to place plaintiffs' property under lease or make it a part of a unitized area without plaintiffs' consent or acquiescence. No minerals were produced from their property. They had no contractual relationship with Superior or the owners of interests in the unitized lands which would give them rights in and to minerals produced from the unit but not produced from their lands. The method employed by Superior in accounting for the minerals produced from the unitized area cannot affect the situation. If, in fact, Superior has retained more than its proper share in the division of mineral proceeds between itself and the royalty owners holding lands within the unitized area, this is a matter between Superior and such royalty owners and does not affect plaintiffs in any way.

In Boggess v. Milam, 127 W.Va. 654, 34 S.E.2d 267 (1945), mentioned above, it appears that W. W. Boggess owned an undivided one-tenth interest in the minerals underlying a tract of 116 acres which had been unitized with a tract of 53 acres for mineral production purposes. The lease on the 116 acre tract and the unitization agreement were drawn so as to include W. W. Boggess but he refused to execute the instruments. A well drilled upon the 53 acre tract was a producer and Boggess contended that the unitization of the 116 acre tract in which he had an interest and the 53 acre tract which had produced effected a merger of title in and to such tracts and that he was entitled to his proportionate part of the production obtained from the unit. (11.-6/169). The West Virginia Court held:

"In our opinion, the so-called unitization agreement does not effect a merger of title. Under its express terms the leases of the fifty-three acres and of the one hundred and sixteen acres not in conflict with its terms remained in effect. It consolidates only the contractual interests under the leases to the United Fuel Gas Company. Boggess having refused to become a party to the lease of the one hundred sixteen acre tract, acquired no contractual right subject to merger, and by remaining aloof, both from the lease and the unitization agreement, neither instrument affected his interest, either favorably or unfavorably."

The Supreme Court of Mississippi followed the doctrine of the Boggess case in California Company v. Britt, 247 Miss. 718, 154 So.2d 144 (1963).

In 3 Summers Oil and Gas 492, § 612, it is stated on authority of Boggess v. Milam that:

"A unitization agreement does not effect a merger of title of the tracts involved so as to give a cotenant of a separate tract, who refuses to sign the lease of his tract or the agreement, an interest as a cotenant in the other tracts of land."

Similarly, in Myers, The Law of Pooling and Unitization, Voluntary—Compulsory, § 14.04, it is said:

"If there is no production from the tract in question the unsigned royalty interest in the absence of equitable considerations receives nothing though there is production elsewhere in the unit."

For a discussion of Boggess v. Milam, California Company v. Britt and Whelan v. Placid Oil Co., 274 S.W.2d 125 (Tex.

Civ.App., 1954, ref. n. r. e.), see, 6 Williams and Myers, Oil and Gas Law, § 925.2.

Plaintiffs have made no attempt to ratify the Todd and Craven leases or the Altair Field Unitization Agreement. It is these instruments which give rise to a claim to the mineral production from tracts not owned by plaintiffs and their cotenants, Estella Todd and the heirs of James Craven. In claiming an interest in such mineral production, plaintiffs in effect seek to claim the beneficial provisions of such contracts and repudiate the unfavorable portions thereof which would limit their claim to the same rights as those held by their cotenants who joined in the Superior lease, namely, royalty rights only. In our opinion, this position is untenable.

For the reasons stated, the judgments of the courts below are reversed and judgment here rendered that respondents (plaintiffs in the trial court) take nothing.