In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00081-CV


______________________________




AMOCO PRODUCTION COMPANY, 


BP AMOCO, MOBIL PRODUCING TEXAS and


NEW MEXICO, INC., and EXXON MOBIL CORPORATION, Appellants



V.



EDMUND R. WOOD, Appellee




 


On Appeal from the 71st Judicial District Court


Harrison County, Texas


Trial Court No. 00-0224




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Amoco Production Company, BP Amoco, Mobil Producing Texas and New Mexico,
Inc., and Exxon Mobil Corporation (collectively Amoco & Exxon Mobil) appeal the trial
court's denial of their motions for summary judgment and the granting of summary
judgment in favor of Edmund R. Wood. Another party to the suit, Vernon E. Faulconer,
Inc., settled its case with Wood during the pendency of this appeal.

 Amoco and Exxon Mobil raise two points of error in their combined brief: (1) the trial
court erred by overruling Amoco's and Exxon Mobil's objections to Wood's summary
judgment evidence and by granting Wood's motion for summary judgment, and (2) the trial
court erred by denying Amoco's and Exxon Mobil's motions for summary judgment. 
Because we decide the trial court erred by granting Wood's motion for summary judgment,
and that Amoco and Exxon Mobil were entitled to judgment as a matter of law, we need
not address whether the trial court erred by denying Amoco's and Exxon Mobil's objections
to Wood's summary judgment evidence.

 In 1954, members of the Key family (1) (collectively "the Keys") owned mineral
interests in Harrison County, Texas. The Keys combined their mineral interests and
contributed these to La Gloria Company and Stanolind Oil and Gas Company to create
much of a 640-acre tract called the Neal C. Richardson unit for the production of natural
gas. La Gloria was the unit's initial designated operator, with Stanolind having the option
to become the operator in 1957. 

 The Richardson well was completed as a gas well in 1954 or 1955. At the time of
its creation, the Richardson unit also covered 23.145 mineral acres owned by John
Dewese (Dewese interest). The Richardson well was not drilled on the Dewese interest. 
Dewese himself never contributed his mineral interests to the Richardson unit. Amoco and
Exxon Mobil succeeded La Gloria and Stanolind (2) as operators of the Richardson well. In
1988, Vernon E. Faulconer, Inc., of Tyler, Texas, succeeded Amoco and Exxon Mobil. 
Faulconer has operated the Richardson unit since that time. 

 The Richardson unit's operating agreement provides that, if a person owned
uncommitted mineral interests that were included in the production unit, then La Gloria and
Stanolind would maintain a "carried interest account" (CIA) for any such uncommitted
mineral interests owners. From the CIA, La Gloria and Stanolind would each pay one half
the well's production costs attributable to that uncommitted interests' percentage share of
the production costs. La Gloria and Stanolind would also pay to the previously
uncommitted mineral interests' owner the proceeds of the CIA for his or her interests. If
there was a surplus (profit) in the CIA at the time the operating agreement terminated, and
the uncommitted mineral interests owner had not joined the unit, the operating agreement
allowed La Gloria and Stanolind to keep those proceeds in the CIA owing to any
uncommitted mineral interests owner. The Richardson well maintained continuous
production since the time of drilling. Therefore, under the terms of the operating
agreement, neither La Gloria nor Stanolind were ever entitled to acquire the balance of the
CIA attributable to the uncommited Dewese interest. 

 On August 25, 1999, the County Court at Law of Harrison County, Texas, appointed
Martha Dieste, the County Clerk of Harrison County, as the receiver for the Dewese
interest. On August 17, 1999, Dieste, in her capacity as receiver, leased the Dewese
interest to Edmund R. Wood. (3) The lease explicitly included the authority to pool or unitize
the land with any existing units. Wood signed and filed a "Ratification of Declaration of
Unitization" on October 7, 1999. The ratification claimed to be effective retroactively, to
March 9, 1954, the date the declaration of unitization was recorded in the Harrison County
deed records. 

 On September 18 of the following year, the 71st Judicial District Court entered an
order nunc pro tunc appointing Dieste and her successors (namely Patsy Cox, County
Clerk of Harrison County), as the receiver of the Dewese interest. (4) Three days later, the
receiver executed a new lease of the Dewese interest to Wood. The new lease stated:

This lease is to be effective from the date of first production on the Neal C.
Richardson Unity [sic], which was on or about the 1st day of March, 1955,
being the date of that certain operating agreement for the Neal C.
Richardson Gas Unit, Blocker Field, Harrison County, Texas.


This lease is given to correct and amend that certain oil, gas and mineral
lease dated August 17th, 1999, from Martha Dieste, County Clerk of Harrison
County, Texas, acting in her capacity as receiver for Mineral Interests, under
appointment by the 71st Judicial District Court in Cause No. 98-0214, for
John A. Deweese [sic], his heirs, known or unknown, if he is deceased, to
Edmund R. Wood, recorded in Volume 2001, Page 4 of the Official Public
Records of Harrison County, Texas, in order to provide that the effective date
of this lease be as of the date of first production.


 Believing the 1999 and 2000 leases entitled him to the Dewese interest's past
production proceeds, Wood demanded payment from Faulconer for the balance of the
uncommitted Dewese interest CIA and all future royalties attributable to those mineral
interests. When Faulconer did not acquiesce to Wood's demand, Wood sued Faulconer
for breach of contract and declaratory judgment. Faulconer in turn filed a third-party
petition joining Amoco and Exxon Mobil, asserting Amoco and Exxon Mobil were the
successors to La Gloria and Stanolind's leasehold for working interests in the Richardson
unit until August 1988. Faulconer sought indemnity for any sums it might be required to
pay Wood as a result of Wood's claims for the period prior to Faulconer's assuming
operation of the Richardson unit. 

 Wood filed a motion for partial summary judgment; Amoco, Exxon Mobil, and
Faulconer filed cross-motions for summary judgment. After the summary judgment hearing
and several supplemental letters from all parties, the trial court overruled Amoco's, Exxon
Mobil's, and Faulconer's motions for summary judgment, and granted Wood's motion for
partial summary judgment. The trial court ordered Amoco, Exxon Mobil, and Faulconer "to
make payment of the amounts held, or required to be held, in their 'Carried Interest
Accounts' for the John Deweese [sic] uncommitted interest to Plaintiff Edmund R. Wood
pursuant to the unrecorded Operating Agreement." The trial court also awarded pre- and
post-judgment interest, and attorneys' fees.

 The parties stipulated that the proceeds attributable to the Dewese uncommitted
interest totalled $171,695.03 for the period 1957 through July 1988, and $45,832.55 for the
period August 1988 through January 2001. (5) A pre- and post-judgment interest rate of ten
percent was agreed to by the parties. The parties also stipulated Wood's reasonable
attorney's fees at trial were $35,000.00 and for each level of unsuccessful appeal by
Amoco, Exxon Mobil, and Faulconer are $10,000.00. (6)

 Amoco and Exxon Mobil contend the trial court erred by denying their motions for
summary judgment and by granting Wood's motion for summary judgment. The key issue
in resolving the dispute between the parties is whether Wood is entitled to claim the
balance of the Dewese interest CIA.

 Summary judgment is proper when the movant establishes that there are no
genuine issues of material fact and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377, 379 (Tex.
App.-Texarkana 1989, no writ). The question on appeal is not whether the summary
judgment proof raises a fact issue with reference to the essential elements of the plaintiff's
cause of action, but whether the summary judgment proof establishes that the movant is
entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co., 795
S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden of proof, all evidence
favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of
material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 When both parties move for summary judgment and the trial court grants one and
denies the other, the reviewing court shall review the summary judgment evidence
presented by both sides and determine all questions presented. Comm'rs Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).

 Article 64.091 of the Texas Civil Practice and Remedies Code, the statute allowing
a trial court to appoint a receiver for mineral interests, does not authorize the receiver to
convey any rights to personal property. Tex. Civ. Prac. & Rem. Code Ann. § 64.091
(Vernon 1997). Royalties become personal property once the mineral estate is severed
from the real estate at the well head. Humble Oil & Ref. Co. v. West, 508 S.W.2d 812, 817
(Tex. 1974); Rogers v. Ricane Enters., Inc., 930 S.W.2d 157, 165 (Tex. App.-Amarillo
1996, no writ). A party to a mineral development lease is only entitled to mineral royalties
accruing after the date the owner ratified the lease in question by either filing suit or by
fulfilling the terms of the operating agreement. See Montgomery v. Rittersbacher, 424
S.W.2d 210, 214-15 (Tex. 1968) (mineral owner not entitled to preratification royalties).

 Further, the receiver's lease in this case purports to be retroactive to March 1, 1955,
the date of first production. Nevertheless, the earliest date Wood could have ratified the
mineral development lease and contributed the Dewese interest was August 17, 1999, the
filing date of the first lease Wood obtained from the receiver. Accordingly, the statutes and
caselaw do not authorize recovery under Wood's claim given the facts of this case. The
trial court erred by granting Wood's motion for summary judgment and awarding royalties
in the Dewese CIA back to 1954. Wood was not entitled to retroactive proceeds as a
matter of law.

 In their second point of error, Amoco and Exxon Mobil contend the trial court erred
by denying their motions for summary judgment. 

 The parties assume Amoco and Exxon Mobil continue to maintain a CIA for the
post-production proceeds attributable to the Dewese interest before 1988, even though
both Amoco and Exxon Mobil sold their interests in the Richardson unit almost fifteen years
ago. Wood sued Amoco and Exxon Mobil for royalties attributable to production proceeds
for the Dewese interest CIA from 1955 through 1988. However, Wood did not acquire a
receivership lease until 1999 for the Dewese interest. A receiver's mineral lease may only
convey the rights to proceeds from future production; it may not convey personal property
such as royalties for past production. Cf. Superior Oil Co. v. Roberts, 398 S.W.2d 276, 278
(Tex. 1966) (fact that operator retained more than its proper share in division of mineral
proceeds is matter for royalty owners; it cannot authorize a claim for retroactive ratification
of lease agreement). Since, as a matter of law, Wood has no right to recover royalties
accruing before obtainment of the receiver's lease, and because this is Wood's only theory
of recovery against Amoco or Exxon Mobil, the trial court erred by denying Amoco's and
Exxon Mobil's motions for summary judgment.

 At oral argument, the parties agreed the trial court rendered a final judgment
disposing of all Wood's claims against Amoco and Exxon Mobil. Because we find the trial
court erred by granting Wood's motion for summary judgment and by denying Amoco's and
Exxon Mobil's motions for summary judgment, we reverse the summary judgment granted
in favor of Wood and render judgment that Wood take nothing from Amoco and Exxon
Mobil.


 Donald R. Ross

 Justice




Date Submitted: May 14, 2003

Date Decided: June 24, 2003





OPINION ON REHEARING



 Amoco and Exxon Mobil filed a motion for rehearing contending this Court should
also remand this case for determining whether the trial court should award Amoco and
Exxon Mobil their attorney's fees. A trial court may award costs and reasonable and
necessary attorney's fees in a declaratory judgment action to the extent that the trial court,
in its discretion, determines such an award is equitable and just. Tex. Civ. Prac. & Rem.
Code Ann. § 37.009 (Vernon 1997); Utley v. Marathon Oil Co., 31 S.W.3d 274 (Tex.
App.-Waco 2000, no pet.). Wood opposes any award of attorney's fees on the ground
that Amoco and Exxon Mobil failed to specifically request such relief in their motion for
summary judgment or in their amended motion for partial summary judgment.

 In the trial court, Amoco and Exxon Mobil's third-party defendants' original answer
contained a request for attorney's fees should the companies prevail. Amoco and Exxon
Mobil's answer to Wood's amended original petition for declaratory judgment also
contained a counterclaim against Wood for attorney's fees. The companies' motion for
summary judgment, however, did not specifically request an award of attorney's fees in
conjunction with an award of summary judgment. Nor did the companies' amended motion
for partial summary judgment specifically request the award of attorney's fees. 

 The trial court's notice of the hearing on the motions for summary judgment did not
include the notice that it would consider the issue of attorney's fees. The record before us
suggests that, when the trial court considered the parties' competing motions for summary
judgment, the court had before it no evidence regarding the attorney's fees from either
side. What constitutes reasonable attorney's fees is a question of fact. Merch. Ctr., Inc.
v. WNS, Inc., 85 S.W.3d 389, 397 (Tex. App.-Texarkana 2002, no pet.). Thus, even
assuming the trial court had properly awarded summary judgment in favor of Amoco and
Exxon Mobil, the court was not in a position, at that juncture of the proceedings, to award
attorney's fees, if any, that it found to be "equitable and just." An additional hearing,
complete with advance notice and the receipt of evidence, would have been required as
a matter of course.

 Given the procedural posture of the trial court at the time it considered the
competing motions for summary judgment, and understanding that we have rendered
judgment in favor of Amoco and Exxon Mobil, we grant Amoco and Exxon Mobil's motion
for rehearing and remand this case to the trial court for the sole purpose of resolving
Amoco and Exxon Mobil's claim for attorney's fees.


 Donald R. Ross

 Justice


Date: August 7, 2003


1. Edmund Key, III, P. W. and Constance Key Wood, R. O. and Rae Key Dulaney,
John P. and Nancy Key Burton, William B., Jr., and Mary Key Henley, Mrs. Rae Key (a
widow), Dolly Bell Key ("a feme sole"), Constance Key Wandel ("a feme sole"), C. M., Jr.,
and Mary Wandel Thompson, and John Philip Wandel. 
2. Stanolind was created in 1931 as the exploration and production business of
Amoco. Stanolind was eventually dissolved during corporate restructuring.
3. Edmund R. Wood is the son of Constance Key Wood, one of the original Key family
members who contributed her mineral rights to create the Richardson Unit. Wood inherited
his mother's mineral estate on her death in 1983. At the time of his inheritance, Amoco
and Exxon Mobil were no longer operating the Richardson unit. 
4. The propriety of the nunc pro tunc order is not at issue before us in this appeal.
5. Without waiving their rights to contest liability on appeal, Amoco, Exxon Mobil, and
Faulconer each stipulated their obligations for damages would be $85,847.52, $85,847.51,
and $45,832.55, respectively.
6. Pending appeal but before submission of the case, Faulconer settled its appeal
against Wood. We severed Faulconer's appeal against Wood, assigned it cause number
06-03-00080-CV, and remanded the case for entry of orders to effectuate the settlement
agreement. Vern E. Faulconer, Inc. v. Wood, No. 06-03-00080-CV (Tex. App.-Texarkana
June 10, 2003) (memorandum opinion).