In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00057-CR


______________________________




MARLON KEITH SANDERS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the County Court 


 Smith County, Texas


Trial Court No. 003-84250-07




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Marlon Keith Sanders appeals from his Smith County (1) conviction for the offense of
possession of marihuana. He was sentenced to 120 days' confinement. 

 Sanders' notice of appeal was filed March 11, 2008, and the clerk's record was filed April 18,
2008. The reporter's record was due July 11, 2008, and has not been filed. Sanders is not indigent. 
Therefore, he is responsible for paying for, or making arrangements to pay for, preparation of the
appellate record. See Tex. R. App. P. 35.3(a), (b). 

 On July 31, 2008, we mailed a letter to Sanders' retained counsel, stating that, if we did not
receive information showing that Sanders was making a substantial and tangible effort to prosecute
the appeal by showing either a reasonable attempt to obtain a reporter's record or by filing a brief
based solely on the clerk's record within ten days of the letter, we would dismiss the appeal for want
of prosecution. Sanders has not contacted this Court. We have also contacted the court reporter and
have been informed that Sanders has not contacted her.

 




 Accordingly, we dismiss this appeal for want of prosecution. See Rodriguez v. State, 970
S.W.2d 133 (Tex. App.--Amarillo 1998, pet. ref'd).


 Josh R. Morriss, III

 Chief Justice


Date Submitted: August 28, 2008

Date Decided: August 29, 2008


Do Not Publish




1. This case has been transferred to this Court as part of the Texas Supreme Court's docket
equalization program.


person owned
uncommitted mineral interests that were included in the production unit, then La Gloria and
Stanolind would maintain a "carried interest account" (CIA) for any such uncommitted
mineral interests owners. From the CIA, La Gloria and Stanolind would each pay one half
the well's production costs attributable to that uncommitted interests' percentage share of
the production costs. La Gloria and Stanolind would also pay to the previously
uncommitted mineral interests' owner the proceeds of the CIA for his or her interests. If
there was a surplus (profit) in the CIA at the time the operating agreement terminated, and
the uncommitted mineral interests owner had not joined the unit, the operating agreement
allowed La Gloria and Stanolind to keep those proceeds in the CIA owing to any
uncommitted mineral interests owner. The Richardson well maintained continuous
production since the time of drilling. Therefore, under the terms of the operating
agreement, neither La Gloria nor Stanolind were ever entitled to acquire the balance of the
CIA attributable to the uncommited Dewese interest. 

 On August 25, 1999, the County Court at Law of Harrison County, Texas, appointed
Martha Dieste, the County Clerk of Harrison County, as the receiver for the Dewese
interest. On August 17, 1999, Dieste, in her capacity as receiver, leased the Dewese
interest to Edmund R. Wood. (3) The lease explicitly included the authority to pool or unitize
the land with any existing units. Wood signed and filed a "Ratification of Declaration of
Unitization" on October 7, 1999. The ratification claimed to be effective retroactively, to
March 9, 1954, the date the declaration of unitization was recorded in the Harrison County
deed records. 

 On September 18 of the following year, the 71st Judicial District Court entered an
order nunc pro tunc appointing Dieste and her successors (namely Patsy Cox, County
Clerk of Harrison County), as the receiver of the Dewese interest. (4) Three days later, the
receiver executed a new lease of the Dewese interest to Wood. The new lease stated:

This lease is to be effective from the date of first production on the Neal C.
Richardson Unity [sic], which was on or about the 1st day of March, 1955,
being the date of that certain operating agreement for the Neal C.
Richardson Gas Unit, Blocker Field, Harrison County, Texas.


This lease is given to correct and amend that certain oil, gas and mineral
lease dated August 17th, 1999, from Martha Dieste, County Clerk of Harrison
County, Texas, acting in her capacity as receiver for Mineral Interests, under
appointment by the 71st Judicial District Court in Cause No. 98-0214, for
John A. Deweese [sic], his heirs, known or unknown, if he is deceased, to
Edmund R. Wood, recorded in Volume 2001, Page 4 of the Official Public
Records of Harrison County, Texas, in order to provide that the effective date
of this lease be as of the date of first production.


 Believing the 1999 and 2000 leases entitled him to the Dewese interest's past
production proceeds, Wood demanded payment from Faulconer for the balance of the
uncommitted Dewese interest CIA and all future royalties attributable to those mineral
interests. When Faulconer did not acquiesce to Wood's demand, Wood sued Faulconer
for breach of contract and declaratory judgment. Faulconer in turn filed a third-party
petition joining Amoco and Exxon Mobil, asserting Amoco and Exxon Mobil were the
successors to La Gloria and Stanolind's leasehold for working interests in the Richardson
unit until August 1988. Faulconer sought indemnity for any sums it might be required to
pay Wood as a result of Wood's claims for the period prior to Faulconer's assuming
operation of the Richardson unit. 

 Wood filed a motion for partial summary judgment; Amoco, Exxon Mobil, and
Faulconer filed cross-motions for summary judgment. After the summary judgment hearing
and several supplemental letters from all parties, the trial court overruled Amoco's, Exxon
Mobil's, and Faulconer's motions for summary judgment, and granted Wood's motion for
partial summary judgment. The trial court ordered Amoco, Exxon Mobil, and Faulconer "to
make payment of the amounts held, or required to be held, in their 'Carried Interest
Accounts' for the John Deweese [sic] uncommitted interest to Plaintiff Edmund R. Wood
pursuant to the unrecorded Operating Agreement." The trial court also awarded pre- and
post-judgment interest, and attorneys' fees.

 The parties stipulated that the proceeds attributable to the Dewese uncommitted
interest totalled $171,695.03 for the period 1957 through July 1988, and $45,832.55 for the
period August 1988 through January 2001. (5) A pre- and post-judgment interest rate of ten
percent was agreed to by the parties. The parties also stipulated Wood's reasonable
attorney's fees at trial were $35,000.00 and for each level of unsuccessful appeal by
Amoco, Exxon Mobil, and Faulconer are $10,000.00. (6)

 Amoco and Exxon Mobil contend the trial court erred by denying their motions for
summary judgment and by granting Wood's motion for summary judgment. The key issue
in resolving the dispute between the parties is whether Wood is entitled to claim the
balance of the Dewese interest CIA.

 Summary judgment is proper when the movant establishes that there are no
genuine issues of material fact and that the movant is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671,
678 (Tex. 1979); Baubles & Beads v. Louis Vuitton, S.A., 766 S.W.2d 377, 379 (Tex.
App.-Texarkana 1989, no writ). The question on appeal is not whether the summary
judgment proof raises a fact issue with reference to the essential elements of the plaintiff's
cause of action, but whether the summary judgment proof establishes that the movant is
entitled to summary judgment as a matter of law. Gonzalez v. Mission Am. Ins. Co., 795
S.W.2d 734, 736 (Tex. 1990). Because the movant bears the burden of proof, all evidence
favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of
material fact are resolved in favor of the nonmovant. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 When both parties move for summary judgment and the trial court grants one and
denies the other, the reviewing court shall review the summary judgment evidence
presented by both sides and determine all questions presented. Comm'rs Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997).

 Article 64.091 of the Texas Civil Practice and Remedies Code, the statute allowing
a trial court to appoint a receiver for mineral interests, does not authorize the receiver to
convey any rights to personal property. Tex. Civ. Prac. & Rem. Code Ann. § 64.091
(Vernon 1997). Royalties become personal property once the mineral estate is severed
from the real estate at the well head. Humble Oil & Ref. Co. v. West, 508 S.W.2d 812, 817
(Tex. 1974); Rogers v. Ricane Enters., Inc., 930 S.W.2d 157, 165 (Tex. App.-Amarillo
1996, no writ). A party to a mineral development lease is only entitled to mineral royalties
accruing after the date the owner ratified the lease in question by either filing suit or by
fulfilling the terms of the operating agreement. See Montgomery v. Rittersbacher, 424
S.W.2d 210, 214-15 (Tex. 1968) (mineral owner not entitled to preratification royalties).

 Further, the receiver's lease in this case purports to be retroactive to March 1, 1955,
the date of first production. Nevertheless, the earliest date Wood could have ratified the
mineral development lease and contributed the Dewese interest was August 17, 1999, the
filing date of the first lease Wood obtained from the receiver. Accordingly, the statutes and
caselaw do not authorize recovery under Wood's claim given the facts of this case. The
trial court erred by granting Wood's motion for summary judgment and awarding royalties
in the Dewese CIA back to 1954. Wood was not entitled to retroactive proceeds as a
matter of law.

 In their second point of error, Amoco and Exxon Mobil contend the trial court erred
by denying their motions for summary judgment. 

 The parties assume Amoco and Exxon Mobil continue to maintain a CIA for the
post-production proceeds attributable to the Dewese interest before 1988, even though
both Amoco and Exxon Mobil sold their interests in the Richardson unit almost fifteen years
ago. Wood sued Amoco and Exxon Mobil for royalties attributable to production proceeds
for the Dewese interest CIA from 1955 through 1988. However, Wood did not acquire a
receivership lease until 1999 for the Dewese interest. A receiver's mineral lease may only
convey the rights to proceeds from future production; it may not convey personal property
such as royalties for past production. Cf. Superior Oil Co. v. Roberts, 398 S.W.2d 276, 278
(Tex. 1966) (fact that operator retained more than its proper share in division of mineral
proceeds is matter for royalty owners; it cannot authorize a claim for retroactive ratification
of lease agreement). Since, as a matter of law, Wood has no right to recover royalties
accruing before obtainment of the receiver's lease, and because this is Wood's only theory
of recovery against Amoco or Exxon Mobil, the trial court erred by denying Amoco's and
Exxon Mobil's motions for summary judgment.

 At oral argument, the parties agreed the trial court rendered a final judgment
disposing of all Wood's claims against Amoco and Exxon Mobil. Because we find the trial
court erred by granting Wood's motion for summary judgment and by denying Amoco's and
Exxon Mobil's motions for summary judgment, we reverse the summary judgment granted
in favor of Wood and render judgment that Wood take nothing from Amoco and Exxon
Mobil.


 Donald R. Ross

 Justice




Date Submitted: May 14, 2003

Date Decided: June 24, 2003

1. Edmund Key, III, P. W. and Constance Key Wood, R. O. and Rae Key Dulaney,
John P. and Nancy Key Burton, William B., Jr., and Mary Key Henley, Mrs. Rae Key (a
widow), Dolly Bell Key ("a feme sole"), Constance Key Wandel ("a feme sole"), C. M., Jr.,
and Mary Wandel Thompson, and John Philip Wandel. 
2. Stanolind was created in 1931 as the exploration and production business of
Amoco. Stanolind was eventually dissolved during corporate restructuring.
3. Edmund R. Wood is the son of Constance Key Wood, one of the original Key family
members who contributed her mineral rights to create the Richardson Unit. Wood inherited
his mother's mineral estate on her death in 1983. At the time of his inheritance, Amoco
and Exxon Mobil were no longer operating the Richardson unit. 
4. The propriety of the nunc pro tunc order is not at issue before us in this appeal.
5. Without waiving their rights to contest liability on appeal, Amoco, Exxon Mobil, and
Faulconer each stipulated their obligations for damages would be $85,847.52, $85,847.51,
and $45,832.55, respectively.
6. Pending appeal but before submission of the case, Faulconer settled its appeal
against Wood. We severed Faulconer's appeal against Wood, assigned it cause number
06-03-00080-CV, and remanded the case for entry of orders to effectuate the settlement
agreement. Vern E. Faulconer, Inc. v. Wood, No. 06-03-00080-CV (Tex. App.-Texarkana
June 10, 2003) (memorandum opinion).