In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00463-CV
_____

SAMSON EXPLORATION, LLC, Appellant/Cross-Appellee

V.

T.W. MOAK AND MOAK MORTGAGE AND INVESTMENT CO.,
Appellees/Cross-Appellants

On Appeal from the 136th District Court
Jefferson County, Texas
Trial Cause No. D-195,106

## MEMORANDUM OPINION

This is an oil and gas case involving a dispute over whether land associated with mineral interests that were leased and included in a pooled unit remained in the unit after the leases were terminated via foreclosure. The appellant/cross-appellee, Samson Exploration, LLC ("Samson") appeals the trial court's final judgment awarding equitable damages to the appellees/cross-appellants, T.W. Moak and Moak Mortgage and Investment Co. ("Moak"). Samson asserts that the trial court

misapplied oil and gas law and ruled in favor of Moak, although Moak held neither a leasehold interest nor a reversionary interest that warranted a share of production in the pooled unit. Samson further argues that it did not have a duty to afford Moak, an unleased co-tenant, the opportunity to ratify prior leases that were terminated via foreclosure. Samson asks this Court to reverse the trial court's judgment and render a judgment that Moak take nothing against Samson.

According to Moak, the trial court correctly determined that it has an interest in the pooled unit but misconstrued the nature of its interest as a royalty interest rather than a working interest. Moak argues that because it has a working interest in the Amelia Gas Unit ("the Unit"), the trial court erred in granting summary judgment in favor of Samson, Bold Minerals II, LLC ("Bold Minerals"), and Etoco, L.P.,[1] on its claim for an accounting, and erred in assessing equitable damages based on a calculation of accrued royalties. Moak asks this Court to reverse the trial court's summary judgment in favor of Samson and Bold on its accounting claim, reverse the trial court's final judgment that Moak take nothing as to Bold and reverse the trial court's award of equitable damages against Samson, and render a judgment for damages in the amount of $171,658.39 against Samson and Bold.  In the alternative,

---

[1]We will collectively refer to Bold Minerals II, LLC and ETOCO, L.P. as Bold.

Moak asks this Court to affirm the trial court's award of equitable damages. Bold filed a brief arguing that Moak does not own a working interest in the Unit and that Moak has no evidence of damages caused by Bold. Bold asks this Court to affirm that portion of the trial court's judgment that Moak take nothing against Bold.

We affirm the trial court's summary judgment in favor of Samson and Bold on Moak's accounting claim. We reverse the trial court's final judgment awarding equitable damages against Samson and render judgment that Moak take nothing as to Samson. We affirm the trial court's final judgment that Moak take nothing against Bold.

PROCEDURAL BACKGROUND

Moak filed suit against Samson, Lucas Petroleum Group, Inc. ("Lucas"), and Bold[2], alleging to be record owners of undivided mineral and leasehold interests in real property that entitled Moak "to participate in production of oil, gas, and other minerals therefrom or from lands pooled therewith, or proceeds from the sale thereof." Moak alleged that Defendants purport to own undivided mineral interests with Moak in the real property at issue, together with additional property pooled therewith, and that Defendants operated a pooled unit that includes the real property

---

[2]We will collectively refer to Samson Exploration, LLC, Lucas Petroleum Group. Inc., ETOCO, T.L.P., and Bold Minerals II, LLC as Defendants.

in which Moak is a record owner, but have failed to account to Moak for production attributable to its share of the undivided mineral interests. Moak asserted claims for an accounting, conversion, unjust enrichment, negligence, and to quiet title.

The parties in the case agreed to the stipulations that are summarized below:

- In February 2012, Samson, Bold Minerals, and Lucas created the Unit by executing and recording a Unit Designation that pooled and combined certain leases and certain lands for the production, storage, processing, and marketing of gas and all hydrocarbons and gaseous substances.

- Bold Minerals assigned ETOCO an interest in the leases subject to the Unit Designation.

- Moak is not a party to any Operating Agreements which govern oil and gas operations within the Unit and which designate Samson as the operator of the Unit.

- Samson drilled and completed two wells in the Unit.

- Moak filed suit against the Defendants alleging causes of action arising out of Samson's failure, as operator, to share with Moak any revenue, royalties, and production from the Unit's oil and gas production with respect to six tracts of land, Property A, Property B, Property C,

4

Property D, Property E, and Property F, which are collectively referred to as the Subject Properties.

- At the time the Unit was created, Moak did not own any property interest in the Subject Properties or within the boundaries of the Unit.

- In 2010, the property owner of Property A ("Porter"), leased all of her fifty percent mineral interest in the property (the "Porter Interest") to Bold Minerals pursuant to a certain Oil, Gas, and Mineral Lease (the "Porter Lease") and at the time the lease was executed, the Porter Interest was subject to a deed of trust that was never subordinated to the Porter Lease which did not allow Porter to in any way commit or bind the mortgagee. The Porter Lease and land were included in the Unit. The Porter Interest was foreclosed on pursuant to the deed of trust, thereby terminating the Porter Lease, and was eventually acquired by Moak pursuant to a Substitute Trustee's Deed in 2012.

- In 2010, the property owner of Property B ("Keys"), leased all of her fifty percent mineral interest in the property (the "Keys Interest") to Bold Minerals pursuant to a certain Oil, Gas, and Mineral Lease (the "Keys Lease") and at the time the lease was executed, the Keys Interest was subject to a deed of trust that was never subordinated to the Keys

Lease which did not allow Keys to in any way commit or bind the mortgagee. The Keys Lease and land were included in the Unit. The Keys Interest was foreclosed on pursuant to the deed of trust, thereby terminating the Keys Lease, and was eventually acquired by Moak pursuant to a Special Warranty Deed in 2012.

- In 2010, the property owner of Property C ("Jones"), leased all of her fifty percent mineral interest in the property (the "Jones Interest") to Bold Minerals pursuant to a certain Oil, Gas, and Mineral Lease (the "Jones Lease") and at the time the lease was executed, the Jones Interest was subject to a deed of trust that was never subordinated to the Jones Lease which did not allow Jones to in any way commit or bind the mortgagee. The Jones Lease and land were included in the Unit. The Jones Interest was foreclosed on pursuant to the deed of trust, thereby terminating the Jones Lease. The interest in Property C was acquired by a third party and eventually leased to Moak pursuant to an Oil, Gas, and Mineral Lease in 2013. The Unit Designation was never amended to add the said Moak Lease to the Unit.

- In 2010, the property owner of Property D ("Anderson"), leased all of her fifty percent mineral interest in the property (the "Anderson

6

Interest") to Bold Minerals pursuant to a certain Oil, Gas, and Mineral Lease (the "Anderson Lease") and at the time the lease was executed, the Anderson Interest was subject to a deed of trust that was never subordinated to the Anderson Lease which did not allow Anderson to in any way commit or bind the mortgagee. The Anderson Lease and land were included in the Unit. The Anderson Interest was foreclosed on pursuant to the deed of trust, thereby terminating the Anderson Lease. The interest in Property D was acquired by a third party and eventually leased to Moak pursuant to an Oil, Gas, and Mineral Lease in 2012. The Unit Designation was never amended to add the Moak Lease to the Unit.

- In 2010, the property owners of Property E ("Wilson"), leased all of their fifty percent mineral interest in the property (the "Wilson Interest") to Samson pursuant to a certain Oil, Gas, and Mineral Lease (the "Wilson Lease") and at the time the lease was executed, the Wilson Interest was subject to a deed of trust that was never subordinated to the Wilson Lease which did not allow Wilson to in any way commit or bind the mortgagee. The Wilson Lease and land were included in the Unit. The Wilson Interest was foreclosed on pursuant to the deed of trust,

7

thereby terminating the Wilson Lease. The interest in Property E was acquired by a third party and eventually leased to Moak pursuant to an Oil, Gas, and Mineral Lease in 2013. The Unit Designation was never amended to add the Moak Lease to the Unit.

- Moak has never owned record title to Property F. Moak's mineral claim to ownership of Property F is by virtue of various legal claims, including but not limited to the Strips and Gores Doctrine by way of Moak's ownership interest in adjacent Property A.

- Neither of the wells located in the Unit had a surface or bottom hole location on or within 467 feet of any of the Subject Properties.

- There has been no revival or ratification of the Porter Lease, the Keys Lease, the Jones Lease, the Anderson Lease, or the Wilson Lease.

- There has been no redemption by the Mortgagors of the Porter Interest, the Keys Interest, the Jones Interest, the Anderson Interest, or the Wilson Interest with respect to the relevant deeds of trust.

- There is no evidence by written lease or otherwise that Moak had a contractual relationship with Defendants with respect to the Unit or Moak's interest in the Subject Properties.

8

- Moak was never a party to any Operating Agreement or Unit Designation.

- Moak never entered into an oil and gas lease with any of Defendants concerning his mineral interests in the Subject Properties.

- The inclusion of the leases and the land of the Subject Properties in the Unit were terminated when the leases were terminated due to foreclosure.

- Moak is not entitled to any royalty or other interests prior to obtaining an ownership in the Subject Properties.

- Moak has not entered into any agreement with the mortgagees of the Subject Properties.

- Moak does not claim any defect in the foreclosure of the Subject Properties.

- Samson had a valid oil and gas lease covering fifty percent mineral interest in the Subject Properties that was not covered by the leases at issue.

Moak filed a traditional motion for partial summary judgment, in which it contended that based on the Texas Supreme Court's ruling in *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419 (Tex. 2008), it is entitled to summary judgment

9

because its participation in the pooled unit did not end with the termination of the Subject Properties' leases via the foreclosure of the mortgages of the original owners and lessors. According to Moak, because the pooling provisions in the Subject Properties' leases pooled the land rather than the lease itself, the termination of the predecessor leases did not terminate Moak's participation in the pooled unit because the land that is the subject of Moak's mineral interest was still bound when the leases terminated. Moak contends that the pooling agreement in the leases is independent and outlives the leases because it is based on the actual land, and once the leases terminated, the ownership of the minerals reverted to the mineral owners.

Defendants filed a traditional motion for summary judgment, in which they asserted that at the time the Unit was created, Moak did not own any interest in the Subject Properties, and the original landowners of the Subject Properties executed leases with Samson that were wiped out by foreclosure of superior deeds of trust. According to Defendants, Moak has no interest in the original leases because they terminated prior to Moak obtaining the mineral interests in the Subject Properties. Defendants argue that *Sheppard* is distinguishable from this case because (1) none of the wells were drilled on or producing from any of the properties owned or leased by Moak, and (2) the pooled leases and the reversionary interests in the Subject Properties were wiped out by the foreclosure of the prior, superior deeds of trust.

10

According to Defendants, Moak is not an interest holder in any leases or land pooled in the Unit, but is instead an unleased co-tenant of the mineral estates of the Subject Properties. Further, Defendants argue that because the wells are not producing from the Subject Properties, Moak has no interest in the production from the wells. Defendants also argue that as an unleased mineral co-tenant, Moak has no right to an accounting or to payments from the production of minerals in the Unit because Moak's unleased mineral interests are not pooled in the Unit.

After considering the parties' joint factual stipulations, competing motions for summary judgment, the evidence, and the applicable law, the trial court issued a letter ruling. The trial court found that, when viewed in light of *Sheppard*, the parties' factual stipulations and evidence unequivocally establish that the lands associated with Moak's mineral interests continued to be included in the pooling unit, despite the foreclosure of the Subject Properties. The trial court determined that the Unit's formation document was a written agreement between Defendants and operated independently from any chain of title of the foreclosed Subject Properties. The trial court found that the termination of the mineral leases via foreclosure did not change any of the lands committed to the Unit. The trial court denied both parties' summary judgment motions as to Moak's causes of action for suit to quiet title, negligence, conversion, and unjust enrichment. The trial court granted Defendants' motion for

11

summary judgment as to Moak's claim for an accounting, finding that although Moak may be entitled to equitable relief on other grounds, the right to an accounting exists by virtue of a contract, and Moak is not entitled to an accounting of royalty payments because there is no contractual relationship between Moak and Defendants. The trial court entered an order on Defendants' and Moak's competing motions for summary judgment, granting Defendants' motion as to Moak's claim for an accounting and denying Defendants' and Moak's motions as to the remainder of the issues. The case proceeded to a bench trial.

## THE TRIAL

The trial court heard testimony from T.W. Moak ('T.W.") who testified about how he had acquired the leases on the five Subject Properties, and how Samson had denied his requests to include his leases in the Unit; and how, even though the leases provided the original lessors or owners a royalty interest, T.W. believed that he was entitled to a working interest in the Subject Properties from the time he acquired them. T.W. testified that he requested that Samson provide him with an accounting of the proceeds that Samson had derived from his interests. According to T.W., Samson was contractually obligated to provide an accounting under the pooling provision despite the leases being broken through foreclosure. T.W. explained that he never requested that Samson allow him to ratify the leases.

12

John Selman, a shareholder of Bold, testified that he had an interest in the Unit. Selman testified that Samson claimed that it had placed the royalties formerly payable to the lessors of the foreclosed interests into no-pay status. Selman explained that he could not verify Samson's assertion that the accumulated royalties amounted to $43,188.88. Selman testified that the original lessors of the Subject Properties only had a royalty interest. Selman explained that Moak was seeking a working interest, which is similar to a net profit basis, which none of the original leases had.

The trial court issued a letter ruling explaining that most of the relevant facts are generally uncontested and that the task before the trial court was to resolve a disputed question of law. The trial court reaffirmed its summary judgment ruling, finding that the termination of the respective mineral leases via foreclosure did not change any of the lands committed to the Unit. The trial court determined that the question was whether Moak, as an unleased mineral co-tenant within the pool, had an equitable claim for any production, proceeds, or royalties from the two wells within the Unit. The trial court noted that in its summary judgment ruling it found that Moak's mineral interests were effectively unmarketable post-foreclosure because of the Texas 40-acre spacing rule and the presence of the two producing wells within the Unit. The trial court found that Moak was entitled to some equitable

13

relief and should have been afforded the opportunity to ratify the identical terms of the prior mineral leases, pre-foreclosure.

At Defendants' request, the trial court issued findings of fact and conclusions of law. The trial court rendered judgment for Bold against Moak on all of Moak's claims and ordered that Moak recover nothing from Bold. The trial court rendered judgment for Moak against Samson on its claims for conversion and unjust enrichment, ordered Moak to recover equitable damages from Samson in the amount of $43,188.88, and ordered that Moak take nothing against Samson on its claims for suit to quiet title and negligence. Samson appealed the trial court's final judgment. Moak appealed the trial court's final judgment and the trial court's ruling on the competing motions for summary judgment.

## MOTION FOR SUMMARY JUDGMENT

We first address Moak's cross-issue, in which Moak argues that the trial court erred in granting summary judgment in favor of Samson and Bold on Moak's claim for an accounting, because the trial court incorrectly determined that Moak has only a royalty interest in the Unit. According to Moak, as an unleased mineral co-tenant with a working interest, it is entitled to an accounting. Moak asks this Court to reverse the trial court's summary judgment in favor of Defendants on its claim for an accounting.

14

We review summary judgment orders *de novo*. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The party moving for traditional summary judgment must establish that (1) no genuine issue of material fact exists, and (2) it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the moving party produces evidence entitling it to summary judgment, the burden shifts to the non-movant to present evidence that raises a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). In determining whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). We review the summary judgment record "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, the reviewing court considers the summary judgment evidence presented by both parties and determines all the questions presented. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). If the reviewing court determines that the trial court erred, the reviewing court renders the judgment the trial court should have rendered,

15

*Id.* We must affirm the summary judgment if any of the grounds asserted in the motion are meritorious. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004).

We first examine whether Moak established that it is entitled to judgment as a matter of law on its accounting claim. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848. In determining that Samson and Bold were entitled to summary judgment as to Moak's claim for an accounting, the trial court relied on the parties' stipulation stating that "no contractual relationship, evidenced by written lease or otherwise, ever existed between Moak and Defendants with respect to the Unit or Moak's interest in the Subject Properties." The trial court found that although Moak may be entitled to equitable relief on other grounds, the right to an accounting exists by virtue of a contract, and because there is no contractual relationship between Moak and Defendants, Moak is not entitled to an accounting of royalty payments.

Had Defendants produced minerals from the Subject Properties in which Moak has a mineral interest, Defendants would have to account to Moak for its share of minerals produced less the necessary and reasonable costs of producing and marketing the minerals. *See Superior Oil Co. v. Roberts*, 398 S.W.2d 276, 277 (Tex. 1966); *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983, writ ref'd n.r.e.). However, the record shows that no minerals were produced from the

16

Subject Properties and that Moak had no contractual relationship with Defendants or the other owners of mineral interests in the Unit which would give Moak the right to minerals produced from the Unit. *See Superior Oil Co.*, 398 S.W.2d at 277-78; *Hunt Oil Co.*, 656 S.W.2d at 642. The record also shows that Moak did not revive or ratify the leases on the Subject Properties that had been terminated by foreclosure. *See Superior Oil Co.*, 398 S.W.2d at 277; *Hunt Oil Co.*, 656 S.W.2d at 642. Because Moak has no contractual relationship with Defendants, Moak failed to prove as a matter of law that it was entitled to an accounting. *See* Tex. R. Civ. P. 166a(c); *Fielding*, 289 S.W.3d at 848; *Hunt Oil Co.*, 656 S.W.2d at 642. We conclude that the trial court did not err in granting summary judgment in favor of Samson and Bold on Moak's claim for an accounting. We overrule Moak's cross-issue and affirm the trial court's summary judgment.

## FINAL JUDGMENT

In issue one, Samson argues that the trial court improperly interpreted the Unit's designation and retroactively awarded Moak royalties on a reversionary interest that was never leased or pooled in the Unit. According to Samson, the Unit only pooled leasehold mineral interests and not the reversionary interests of the prior leaseholders. Samson contends that because the Unit designation does not contain language that pools any reversionary mineral interests of the original lessors, the

17

reversionary interests that Moak acquired were never pooled into the Unit. According to Samson, even if the Unit designation had attempted to pool the reversionary interests, such an attempt would have been ineffective because the mortgagees had not authorized their interests in the Subject Properties to be pooled. Samson maintains that having land within the metes and bounds of a pooled unit does not mean that the owner's mineral interests are pooled in the Unit. Samson argues that the trial court improperly concluded that the termination of the respective mineral leases via foreclosure did not change any of the lands pooled in the Unit.

In issue two, Samson complains that the trial court incorrectly applied the law by concluding that Moak was entitled to some equitable relief and that Moak should have been afforded the opportunity to ratify the identical terms of the prior mineral leases of the Subject Properties. Samson argues that it had no duty to identify, locate, and afford shared-production opportunities to an unleased mineral co-tenant who held zero interest in the pooled Unit, and Samson had no duty to provide Moak an opportunity to ratify pre-foreclosure mineral leases because Moak was never a party to any lease or contract with Samson, did not own any property that had an oil and gas well on it, and never requested to ratify or adopt the pre-foreclosure leases.

Appellate courts review a trial court's conclusions of law *de novo* as legal questions. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.

18

2002). The reviewing court may review the trial court's legal conclusions drawn from the facts to determine whether the trial court correctly applied the law. *Id.* We must uphold conclusions of law if any legal theory supported by the evidence sustains the judgment. *Wyde v. Francesconi*, 566 S.W. 3d 890, 894-95 (Tex. App.—Dallas 2018, no pet.). Conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id.* at 895.

We consider whether the trial court erred by concluding as a matter of law that the lands associated with Moak's mineral interests continued to be included in the Unit despite the foreclosures of the Subject Properties and that Moak should have been afforded the opportunity to ratify the identical terms of the prior mineral leases of the Subject Properties because Moak has an equitable claim to mineral royalty payments. In forming its conclusions, the trial court relied on the Texas Supreme Court's ruling in *Sheppard*. *See Sheppard*, 282 S.W.3d at 424, 428-29. We conclude that *Sheppard* is distinguishable. In *Sheppard*, Jane Sheppard was a party to the original lease which authorized pooling of "all or any part of the leased premises or interest therein[.]" *See id.* at 423. Because Jane's possibility of reverter was an interest in the leased premises, the language in Jane's lease authorized her reversionary interest in the mineral estate to be pooled in the Unit. *See id.* at 423-24. Additionally, the wells were located on Jane's property, Jane's lease was not

19

terminated by the foreclosure of a deed of trust, and there was no evidence that Jane's property was subject to a mortgage. *See id.* at 421-22.

An oil and gas lease is a fee simple determinable estate in the realty. *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991). "A possibility of reverter is the interest left in a grantor after the grant of a fee simple determinable." *Id.* Upon the termination of the lease, the grantor's possibility of reverter in the mineral estate becomes a present possessory interest and the mineral estate reverts to the grantors of the lease, their heirs, or assigns. *Id.* The owner of a mineral estate can sell or assign the possibility of reverter. *Id.* However, the lessee only acquires ownership of all the minerals in place that the grantor owns and purports to lease. *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192 (Tex. 2003).

The trial court concluded that the mortgagors did not have any power or authority, contractual or otherwise, to pool or divest any interest in the Subject Properties that would be binding upon the mortgagees or the purchasers at the foreclosure sales. The record shows that the Subject Properties were subject to a mortgage when the original mineral leases were executed and that the leases terminated by virtue of the foreclosure sales.[3] Because the Subject Properties were

---

[3]We note that Moak and Samson agree that section 66.001 of the Texas Property Code, which became effective January 1, 2016, does not apply in this case. *See* Tex. Prop. Code Ann. § 66.001(b) (providing that an oil and gas lease covering

encumbered by deed of trust liens, the legal and equitable estates in the properties were severed, and the original lessors never acquired equitable title to the Subject Properties because they defaulted on the notes. *See XTO Entergy, Inc. v. EOG Res., Inc.*, 554 S.W.3d 127, 139 (Tex. App.—San Antonio 2018, pet. filed). Thus, even though the original leases included all of the land described in the lease, together with any reversionary rights of the lessor, the original lessors never acquired any reversionary rights in the lands because the properties were foreclosed upon. If the original lessors never acquired any reversionary rights in the lands due to foreclosure, and the foreclosures terminated the leases, then it follows that post-foreclosure, the Defendants no longer had the authority to pool all or any part of the land or any interest covered by the leases. *See XTO Energy Inc. v. Goodwin*, 584 S.W.3d 481, 493-94 (Tex. App.—Tyler 2017, pet. denied).

Generally, oil and gas leases, and pooling clauses are matters of contract. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017) "A lessee's authority to pool requires the lessor's consent, which is typically furnished via a pooling provision in the mineral lease." *Id.* A pooling agreement that fails to comply with the terms of the lease is invalid and unenforceable absent the lessor's

real property subject to a security instrument that has been foreclosed remains in effect after the foreclosure sale if the lease has not terminated or expired on its own terms).

21

ratification. *Id.* The trial court found that post-foreclosure, neither party attempted to ratify the terms of the prior mineral leases. The trial court further found that there was no evidence that Moak entered into any type of agreement with the mortgagees of the Subject Properties. The record shows that Moak had no contractual relationship with Defendants or the other owners of mineral interests in the Unit which would give Moak the right to minerals produced from the Unit but not produced from the Subject Properties. *See Superior Oil Co.*, 398 S.W.2d at 277-78; *Donnan v. Atlantic Richfield*, 732 S.W.2d 715, 717 (Tex. App.—Corpus Christi 1987, writ denied); *Hunt Oil Co.*, 656 S.W.2d at 642. Accordingly, we conclude that Samson had no obligation to pay any royalties to Moak. *See Sun Expl. and Prod. Co. v. Pitzer*, 822 S.W.2d 294, 295 (Tex. App.—Eastland 1991, writ denied).

"A claim for money had and received is an equitable action that may be maintained to prevent unjust enrichment when the defendant obtains money, which in equity and good conscience belongs to the plaintiff." *Spellmann v. Love*, 534 S.W.3d 685, 693 (Tex. App.—Corpus Christi 2017, pet. denied). To prove conversion, a plaintiff must show that (1) he owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's right as an owner; (3) the plaintiff

demanded return of the property; and (4) the defendant refused to return the property. *Goodwin*, 584 S.W.3d at 496. Having concluded that Samson had no obligation to pay Moak any royalties, we further conclude that Moak failed to prove its claims for unjust enrichment and conversion. Accordingly, we hold that the trial court erred as a matter of law by awarding Moak equitable damages based on Moak's claims for unjust enrichment and conversion. *See generally Marchand*, 83 S.W.3d at 794. We sustain both of Samson's issues and reverse the trial court's final judgment awarding Moak equitable damages against Samson in the amount of $43,188.88 and render judgment that Moak take nothing as to Samson.

## BOLD'S CROSS-POINT

In response to Moak's cross-issue, Bold filed a brief arguing that the trial court correctly concluded that Moak is not entitled to a working interest in the Unit, and that Moak failed to prove that Bold received or converted any funds that were attributable and payable to Moak. Having reversed the trial court's final judgment awarding equitable damages against Samson and rendered judgment that Moak take nothing as to Samson, and having affirmed the trial court's summary judgment in favor of Samson and Bold on Moak's accounting claim, we need not address Bold's cross-point. *See* Tex. R. App. P. 47.1. Accordingly, we affirm the trial court's final judgment that Moak take nothing as to Bold.

23

AFFIRMED IN PART; REVERSED AND RENDERED IN PART.


                        _____

                              STEVE McKEITHEN
                                Chief Justice


Submitted on October 2, 2019
Opinion Delivered January 16, 2020

Before McKeithen, C.J., Kreger and Johnson, JJ.